UNITED STATES of America, Plaintiff,

v.

Chastain MONTGOMERY, Sr., Defendant.

No. 2:11–cr–20044–JPM–1.

United States District Court, W.D. Tennessee, Western Division.

Signed March 19, 2014.

Edward L. Stanton, III, Lorraine Craig, Stuart J. Canale, Tony R. Arvin, U.S. Attorney's Office, Memphis, TN, Michael Stephen Warbel, U.S. Department of Justice, Washington, DC, for Plaintiff.

Michael Edwin Scholl, The Scholl Law Firm, C. Anne Tipton, Memphis, TN, Susan Katherine Marcus, Law Office of Susan K. Marcus, New York, NY, for Defendant.

ORDER DENYING MOTION TO DISMISS THE "SPECIAL FINDINGS" FROM THE SUPERSEDING INDICTMENT, AND TO STRIKE THE NOTICE OF INTENT TO SEEK THE DEATH PENALTY BECAUSE IT FAILS TO ADEQUATELY NARROW DEFENDANT'S ELIGIBILITY FOR THE DEATH PENALTY, MEET HEIGHTENED STANDARDS OF RELIABILITY, IS VAGUE AND DUPLICATIVE AND OVERLY BROAD (ECF NO. 141);

DENYING ·MOTION TO STRIKE STATUTORY AGGRAVATORS (ECF NO. 142); DENYING MOTION TO STRIKE THE NON–STATUTORY AGGRAVATING FACTORS FOR FAILURE TO INCLUDE THEM IN THE INDICTMENT (ECF NO. 143); DENYING MOTION TO DISMISS/STRIKE NON–STATUTORY AGGRAVATING FACTOR CONCERNING VICTIM–IMPACT EVIDENCE, OR IN THE ALTERNATIVE, TO LIMIT VICTIM–IMPACT TESTIMONY (ECF NO. 144);

DEFERRING RULING ON MOTION FOR BILL OF PARTICULARS REGARDING VICTIM IMPACT (ECF NO. 145); DENYING MOTION TO STRIKE/DISMISS NON–STATUTORY AGGRAVATOR CONCERNING STATUS OF VICTIMS (ECF NO. 146);

DENYING MOTION TO DISMISS/STRIKE NON–STATUTORY AGGRAVATING FACTORS CONCERNING IMPACT OF THE OFFENSE ON THE EMPLOYER AND COLLEAGUES OF THE VICTIM (ECF NO. 147);

DENYING MOTION TO STRIKE FUTURE DANGEROUSNESS AS AN AGGRAVATOR (ECF NO. 148);

DENYING MOTION TO STRIKE LACK OF REMORSE AS AN AGGRAVATOR (ECF NO. 149);

AND DENYING MOTION TO DISMISS OR STRIKE ANY AGGRAVATOR WITH OPEN-ENDED PHRASING (ECF NO. 150)

JON P. McCALLA, District Judge.

Before the Court are the following Motions, filed by Defendant Chastain Montgomery, Sr. ("Defendant"), on May 6, 2013: (1) a Motion to Dismiss the "Special Findings" from the Superseding Indictment, and to Strike the Notice of Intent to Seek the Death Penalty Because It Fails to Adequately Narrow Defendant's Eligibility for the Death Penalty, Meet Heightened Standards of Reliability, Is Vague and Duplicative and Overly Broad (ECF No. 141); (2) a Motion to Strike Statutory Aggravators (ECF No. 142); (3) a Motion to Strike the Non–Statutory Aggravating Factors for Failure to Include Them in the Indictment (ECF No. 143); (4) a Motion to Dismiss/Strike Non–Statutory Aggravating Factor Concerning Victim–Impact Evidence, or in the Alternative, to Limit Victim–Impact Testimony (ECF No. 144); (5) a Motion for a Bill of Particulars Regarding Victim Impact (ECF No. 145); (6) a Motion to Strike/Dismiss Non–Statutory Aggravator Concerning Status of Victims (ECF No. 146); (7) a Motion to Dismiss/Strike Non–Statutory Aggravating Factors Concerning Impact of the Offense on the Employer and Colleagues of the Victim (ECF No. 147); (8) a Motion to Strike Future Dangerousness as an Aggravator (ECF No. 148); (9) a Motion to Strike Lack of Remorse as an Aggravator (ECF No. 149); and (10) a Motion to

Dismiss or Strike Any Aggravator with Open–Ended Phrasing (ECF No. 150). The United States of America (the "Government") timely responded in opposition to each of the Motions on June 12, 2013.[1] (ECF Nos. 162–68, 170.)

For the reasons stated below, each of Defendant's Motions (ECF Nos. 141–44, 146–50) is DENIED except for his Motion for a Bill of Particulars Regarding Victim Impact (ECF No. 145), on which the Court DEFERS RULING.

## I. BACKGROUND

On February 24, 2011, the Government filed a six-count Indictment against Defendant. (ECF No. 1.) On May 31, 2012, the Government filed a seven-count Superseding Indictment alleging the following facts and charges against Defendant. (ECF No. 49.)

The first six Counts allege crimes committed on October 18, 2010, and that Defendant was aided and abetted by his son, Chastain Montgomery, Jr., who is deceased. (Id. at 1–6.) Counts One and Two charge Defendant, pursuant to 18 U.S.C. § 1114(1) and 18 U.S.C. § 2, with the murders of Paula Robinson and Judy Spray, employees of the United States Postal Service ("USPS"). (Id. at 1–2.)

Count Three charges Defendant with the robbery of Paula Robinson and Judy Spray of the United States' money while using a dangerous weapon in violation of 18 U.S.C. § 2114(a) and 18 U.S.C. § 2. (Id. at 3.) Count Four charges Defendant with the use of a firearm while perpetrating the crime of violence alleged in Count Three in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2. (Id. at 4.) Counts Five and Six charge Defendant with the murder of Paula Robinson and Judy Spray while committing the crime alleged in Count Four in violation of 18 U.S.C. § 924(j)(1) and 18 U.S.C. § 2. (Id. at 5–6.)

Count Seven charges Defendant with conspiring from August 30, 2010, to February 14, 2011, with his son to rob USPS employees having custody of money and property of the United States in violation of 18 U.S.C. § 2114(a) and to rob banks and credit unions in violation of 18 U.S.C. § 2113(a). (Id. at 7.) This conspiracy is charged as a violation of 18 U.S.C. § 371. (Id. at 10.)

In support of Count Seven, the following facts are alleged in the Superseding Indictment. On August 30, 2010, Defendant purchased a Smith & Wesson .40 caliber semiautomatic pistol in Nashville, Tennessee, and, on October 15, 2010, Defendant purchased a Ruger 9mm semiautomatic pistol in Nashville, Tennessee. (Id. at 7.) Defendant provided his son with the Ruger 9mm pistol. (Id. at 8.)

On October 18, 2010, Defendant and his son robbed the United States Post Office in Henning, Tennessee. (Id.) "[U]sing the Smith & Wesson .40 caliber pistol," Defendant "shot and killed United States Postal employee Paula Robinson inside the United States Post Office in Henning, Tennessee." (Id.) "[U]sing the Ruger 9mm pistol provided to him by [Defendant]," Defendant's son "shot and killed United States Postal Service employee Judy Spray inside the United States Post Office in Henning, Tennessee." (Id.)

On October 26, 2010, Defendant and his son stole a Nissan Frontier pickup truck in Smyrna, Tennessee. (Id. at 9.) On October 29, 2010, Defendant and his son "robbed at gunpoint the Southeast Financial Credit Union in Lavergne [sic], Tennessee," and used the stolen Nissan Fron-

tier pickup truck as a getaway vehicle. (*Id.*)

On November 29, 2010, Defendant and his son stole a Chevrolet Venture minivan in La Vergne, Tennessee. (*Id.*) On November 29, 2010, Defendant and his son "robbed at gunpoint the Mid–South Bank, Smyrna, Tennessee," and used the stolen Chevrolet Venture minivan as the getaway vehicle. (*Id.*)

On February 11, 2011, Defendant sent a text message to his son stating, "We need to discuss an escape route." (*Id.*) On February 14, 2011, Defendant's son "stole at gunpoint a Chevrolet pickup truck from a person in Nashville, Tennessee" (*id.*) and "drove in the stolen Chevrolet pickup truck from Nashville, Tennessee[,] to Mason, Tennessee" (id. at 9–10). "On February 14, 2011, [Defendant's son] fired shots at police officers in Mason, Tennessee." (*Id.* at 10.) Defendant's son was shot and killed by police. (Tr. Dec. 12, 2012, ECF No. 117, at 22:17–23:16.)

The Superseding Indictment also provides a Notice of Special Findings that, as to Counts One, Two, Five, and Six, Defendant:

(1) was more than 18 years of age at the time of the offense (Title 18, United States Code, Section 3591(a));

(2) intentionally killed the victim (Title 18, United States Code, Section 3591(a)(2)(A));

(3) intentionally inflicted serious bodily injury that resulted in the death of the victim (Title 18, United States Code, Section 3591(a)(2)(B));

(4) intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act (Title 18, United States Code, Section 3591(a)(2)(C));

(5) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act (Title 18, United States Code, Section 3591(a)(2)(D));

(6) in the commission of the offense knowingly created a grave risk of death to 1 or more persons in addition to the victim of the offense (Title 18, United States Code, Section 3592(c)(5));

(7) committed the offense in the expectation of receipt of anything of pecuniary value (Title 18, United States Code, Section 3592(c)(8));

(8) committed the offense after substantial planning and premeditation to cause the death of a person (Title 18, United States Code, Section 3592(c)(9));

(9) intentionally killed more than one person in a single criminal episode (Title 18, United States Code, Section 3592(c)(16)).

(ECF No. 49 at 11–12.)

On March 15, 2013, the Government filed a Notice of Intent to Seek the Death Penalty (the "Notice"). (ECF No. 133.) The Government's Notice indicates that the Government

will seek to prove the following statutory aggravating factors as the basis for the imposition of the death penalty in relation to Counts One and Two of the Indictment:

1. *Pecuniary Gain.* The [D]efendant, Chastain Montgomery, Sr., committed the offense as consideration for the re-

ceipt, or in the expectation of the receipt, of anything of pecuniary value. (18 U.S.C. § 3592(c)(8)).

2. *Multiple killings or attempted killings.* The [D]efendant, Chastain Montgomery, Sr., intentionally killed or attempted to kill more than one person in a single criminal episode. (18 U.S.C. § 3592(c)(16)).

(*Id.* at 3.)

The Government's Notice further indicates that the Government will seek to prove multiple "non-statutory aggravating factors as the basis for the imposition of the death penalty in relation to Counts One, Two, Five[,] and Six of the Indictment," including: victim-impact evidence as to the characteristics of the victims, the impact of the offense on the families of the victims, and the impact of the offense on the employer and colleagues of the victims; the status of the victims as Government employees performing their official duties; that the murder occurred during the course of an armed robbery; that Defendant continued to commit violent criminal acts after the October 18, 2010, murders; that Defendant used his 18–year–old son as an accomplice in planning and committing a series of violent crimes resulting in his son's death; that Defendant has demonstrated a lack of remorse for the murders; and that Defendant is likely to commit criminal acts of violence in the future ("future dangerousness"). (*Id.* at 3–6.)

The United States further gives notice that, in support of the imposition of the death penalty, in addition to evidence of the above-listed aggravating factors, [the Government] intends to rely upon all the evidence admitted by the Court

at the guilt phase of the trial and the offenses of conviction as alleged in the Indictment as they relate to the background and character of the [D]efendant, Chastain Montgomery, Sr., his moral culpability, and the nature and circumstances of the offenses charged in Counts One, Two, Five[,] and Six of the Indictment.

(*Id.* at 6.) On February 26, 2014, the Government filed a Supplement to Notice of Intent to Seek the Death Penalty providing the following additions in support of the future dangerousness aggravating factor:

(i) Defendant loudly interrupted court proceedings on September 30, 2013, and fought with law enforcement officers attempting to restrain him.

(j) Defendant loudly interrupted court proceedings and threatened to kill a witness, Michael Farrish, on October 4, 2013, requiring Defendant to be forcibly subdued and restrained by law enforcement personnel.

(ECF No. 343 at 1 (record citations omitted).)

The instant Motions challenge various aspects of the Government's Notice.[2] (*See* ECF Nos. 141–50.) The Court explains and analyzes Defendant's challenges more fully below.

## II. LEGAL STANDARD

██ "[T]he Eighth Amendment requires that a sentence of death not be imposed arbitrarily." *Jones v. United States,* 527 U.S. 373, 381, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999). "In order for a capital sentencing scheme to pass constitutional muster, it must perform a narrowing

---

**2.** Defendant also has pending a Motion to Declare Death Penalty Unconstitutional and to Dismiss the "Special Findings" from the Superseding Indictment, and to Strike the Notice of Intent to Seek the Death Penalty Because of the Arbitrary, Capricious, and Random Application of the Federal Death Penalty Act, filed May 7, 2013. (ECF No. 151.) The Court will address this Motion in a separate Order.

function with respect to the class of persons eligible for the death penalty and must also ensure that capital sentencing decisions rest upon an individualized inquiry." *Id.* The imposition of the federal death penalty is governed by the Federal Death Penalty Act of 1994 ("FDPA"), 18 U.S.C. §§ 3591–3599.

## A. Framework of the FDPA

"There are two stages in the capital sentencing decision making process: the eligibility decision and the selection decision." *United States v. Lawrence,* 735 F.3d 385, 417 (6th Cir.2013) (citing *Tuilaepa v. California,* 512 U.S. 967, 971, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994)); *see also Buchanan v. Angelone,* 522 U.S. 269, 275, 118 S.Ct. 757, 139 L.Ed.2d 702 (1998) ("In the eligibility phase, the jury narrows the class of defendants eligible for the death penalty, often through consideration of aggravating circumstances. In the selection phase, the jury determines whether to impose a death sentence on an eligible defendant." (citations omitted)). "There is one principle common to both decisions, however: The State must ensure that the process is neutral and principled so as to guard against bias or caprice in the sentencing decision." *Tuilaepa,* 512 U.S. at 973, 114 S.Ct. 2630 (citing *Gregg v. Georgia,* 428 U.S. 153, 189, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)).

### 1. The Eligibility Phase

In the eligibility phase, "the trier of fact must convict the defendant of murder and find one 'aggravating circumstance' (or its equivalent) at either the guilt or penalty phase." *Tuilaepa,* 512 U.S. at 971–72, 114 S.Ct. 2630 (citations omitted). Regarding the eligibility phase, the United States Supreme Court has "stressed the need for

channeling and limiting the jury's discretion to ensure that the death penalty is a proportionate punishment and therefore not arbitrary or capricious in its imposition." *Buchanan,* 522 U.S. at 275–76, 118 S.Ct. 757.

For a defendant to be eligible for the death penalty under the FDPA, a jury must find, pursuant to § 3591(a)(2), the presence of at least one of the "intent" factors enumerated by Congress, i.e., that the defendant:

(A) intentionally killed the victim;

(B) intentionally inflicted serious bodily injury that resulted in the death of the victim;

(C) intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act; or

(D) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act. . . .

18 U.S.C. § 3591(a)(2). Moreover, the jury must find at least one of sixteen enumerated statutory aggravating factors. *See id.* § 3592(c). "The burden of establishing the existence of any aggravating factor is on the government, and is not satisfied unless the existence of such a factor is established beyond a reasonable doubt." [3] *Id.* § 3593(c). "A finding with

---

**3.** By contrast, "[t]he burden of establishing the existence of any mitigating factor is on the defendant, and is not satisfied unless the existence of such a factor is established by a

respect to any aggravating factor must be unanimous." *Id.* § 3593(d). "Once the jury finds the requisite intent and statutory aggravating factors, the crime is death-eligible." *United States v. Higgs,* 353 F.3d 281, 294 (4th Cir.2003); *see also Jones,* 527 U.S. at 376–77, 119 S.Ct. 2090; *Lawrence,* 735 F.3d at 417 ("A defendant is rendered eligible for the death penalty in a homicide case upon a finding by the jury or judge that the defendant is guilty of murder and the finding of one aggravating circumstance at either the guilt or penalty phase." (citations omitted)).

### 2. The Selection Phase

After the eligibility phase, the jury enters the selection phase, in which it must decide "whether [a defendant] should receive a death sentence." *Jones,* 527 U.S. at 377, 119 S.Ct. 2090. The FDPA "requires that the sentencing jury consider all of the aggravating and mitigating factors and determine whether the former outweigh the latter (or, if there are no mitigating factors, whether the aggravating factors alone are sufficient to warrant a death sentence)." *Id.* In the selection phase, "[t]he jury ... may consider whether any other aggravating factor for which notice has been given exists." 18 U.S.C. § 3592(c). The selection phase requires "a broad inquiry into all relevant mitigating evidence to allow an individualized determination." *Buchanan,* 522 U.S. at 276, 118 S.Ct. 757 (citations omitted); *see also Tuilaepa,* 512 U.S. at 972, 114 S.Ct. 2630 (" 'What is important at the selection stage is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime.' " (quoting *Zant v. Stephens,* 462 U.S. 862, 879, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983))). Both statutory and non-statutory aggravating factors must be considered during the se-

lection phase. *See* 18 U.S.C. § 3593(e) ("the jury ... shall consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death").

### B. Overbreadth and Vagueness of Aggravating Factors

 The aggravating factors—in this case, the statutory factors enumerated in § 3592(c)—"must meet two requirements. First, the [aggravating] circumstance may not apply to every defendant convicted of a murder; it must apply only to a subclass of defendants convicted of murder. Second, the aggravating circumstance may not be unconstitutionally vague." *Tuilaepa,* 512 U.S. at 972, 114 S.Ct. 2630 (citations omitted); *see also Lawrence,* 735 F.3d at 417 (same). "[A]s long as the 'narrowing function' of the aggravating circumstance is not impermissibly vague and is incorporated into the capital sentencing scheme, whether in the guilt phase or the eligibility phase, the process is not constitutionally infirm." *Lawrence,* 735 F.3d at 417 (citing *Lowenfield v. Phelps,* 484 U.S. 231, 246, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988)). Aggravating factors "must be construed to permit the sentencer to make a principled distinction between those who deserve the death penalty and those who do not." *Lewis v. Jeffers,* 497 U.S. 764, 776, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990).

### 1. Vagueness

"Ensuring that a sentence of death is not so infected with bias or caprice is our 'controlling objective when we examine eligibility and selection factors for vagueness.' " *Jones,* 527 U.S. at 400, 119 S.Ct. 2090 (quoting *Tuilaepa,* 512 U.S. at 973, 114 S.Ct. 2630 (referring to a "common-sense core of meaning")). Review for

preponderance of the information." 18 U.S.C. § 3593(c).

vagueness is "quite deferential" and, "[a]s long as an aggravating factor has a core meaning that criminal juries should be capable of understanding, it will pass constitutional muster." *Id.* (quoting and citing *Tuilaepa*, 512 U.S. at 973, 114 S.Ct. 2630) (internal quotation marks omitted).

▪ "[T]he Government is not required to provide specific evidence in its [§ 3593] notice of intent." *United States v. LeCroy*, 441 F.3d 914, 929 (11th Cir.2006) (second alteration in original) (quoting *United States v. Battle*, 173 F.3d 1343, 1347 (11th Cir.1999)) (internal quotation marks omitted); *accord Higgs*, 353 F.3d at 325 ("The FDPA and the Constitution require that the defendant receive adequate notice of the aggravating factor, ... not notice of the specific evidence that will be used to support it."); *United States v. Lee*, 274 F.3d 485, 495–96 (8th Cir.2001) (same). "[A]lthough there is a right to advance notice of the charges, there is no extant constitutional right to advance notice of the evidence to prove such charges in a capital sentencing hearing." *LeCroy*, 441 F.3d at 929 (citing *Gray v. Netherland*, 518 U.S. 152, 167–68, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996)).

### 2. Overbreadth

▪ "An aggravating factor can be overbroad if the sentencing jury 'fairly could conclude that an aggravating circumstance applies to *every* defendant eligible for the death penalty.'" *Jones*, 527 U.S. at 401, 119 S.Ct. 2090 (quoting *Arave v. Creech*, 507 U.S. 463, 474, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993)). Determining whether an aggravating factor is overbroad in the context of the selection decision is different than in the context of the eligibility decision. *See id.* ("We have not, however, specifically considered what it means for a factor to be overbroad when it is important only for selection pur-

poses. . . ."); *United States v. Fields*, 516 F.3d 923, 945 (10th Cir.2008) ("While the selection stage does not involve the narrowing function that is of primary importance at the eligibility stage, the [Supreme] Court identified another function relevant to both: protection 'against bias or caprice in the sentencing decision' through the use of factors that 'direct the jury to the individualized circumstances of the case.'" (quoting *Jones*, 527 U.S. at 402, 119 S.Ct. 2090)).

Regarding the selection decision, "[e]ven though the *concepts* of [certain non-statutory aggravating factors] may well be relevant in every case, *evidence* [supporting the non-statutory aggravating factors] in a particular case is inherently individualized." *Jones*, 527 U.S. at 401, 119 S.Ct. 2090. Accordingly, non-statutory aggravating factors will not be overbroad "[s]o long as [the non-statutory aggravating factors] are used to direct the jury to the individual circumstances of the case. . . ." *Id.* at 402, 119 S.Ct. 2090.

### C. Duplicative Aggravating Factors

In *United States v. McCullah*, the United States Court of Appeals for the Tenth Circuit found substantial overlap between two aggravating factors in the Continuing Criminal Enterprise provision of the Anti–Drug Abuse Act, 21 U.S.C. § 848. *See* 76 F.3d 1087, 1111 (10th Cir.1996) (finding that "[a]ny intentional conduct aimed at producing death is by definition conduct done with knowledge of grave risk of death."). According to the Tenth Circuit, "[s]uch double counting of aggravating factors, especially under a weighing scheme, has a tendency to skew the weighing process and creates the risk that the death sentence will be imposed arbitrarily and thus, unconstitutionally." *Id.*

▪ "[A]ggravating factors are duplicative when one 'necessarily subsumes' the

other, or, in other words, when a jury would 'necessarily have to find one in order to find the other.'" *United States v. Fell ("Fell II")*, 531 F.3d 197, 236 (2d Cir.2008) (citations omitted); *see also Fields v. Gibson*, 277 F.3d 1203, 1219 (10th Cir.2002) (same). "Two factors are *not* duplicative merely because they are supported by the same evidence." *Fell II*, 531 F.3d at 236 (citing *Jones*, 527 U.S. at 399, 119 S.Ct. 2090).

The Supreme Court has not endorsed the Tenth Circuit's double-counting theory. *See Jones*, 527 U.S. at 398, 119 S.Ct. 2090 ("We have never before held that aggravating factors could be duplicative so as to render them constitutionally invalid, nor have we passed on the 'double counting' theory that the Tenth Circuit advanced in *McCullah* ...."). Moreover, the circuit courts are split on this issue.[4] *See Fell II*, 531 F.3d at 235 n. 26 (indicating that the "Fourth and Ninth Circuits have aligned with the Tenth Circuit and adopted their own variations of the rule in *McCullah*," but that "the Eighth Circuit has rejected the duplicative aggravating factor theory when applied to the FDPA ... and the Fifth Circuit has withdrawn its support of the double-counting theory in light of *Jones*.").

### D. Admissibility of Evidence

As relevant to the instant Motions, the FDPA provides that:

The government may present any information relevant to an aggravating factor for which notice has been provided under subsection (a). Information is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.

18 U.S.C. § 3593(c).

The FDPA is more stringent than the Federal Rules of Evidence ("FRE") in one sense:

the balancing test set forth in the FDPA is, in fact, more stringent than its counterpart in the FRE, which allows the exclusion of relevant evidence "if its probative value is *substantially* outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed.R.Evid. 403 (emphasis added). Thus, the presumption of admissibility of relevant evidence is actually narrower under the FDPA than under the FRE.

*United States v. Fell ("Fell I")*, 360 F.3d 135, 145 (2d Cir.2004). The FDPA, however, is more stringent in this sense only; evidence not allowed at trial under other provisions of the FRE may be allowed under the FDPA. *See United States v. Lee*, 374 F.3d 637, 648 (8th Cir.2004) (rejecting an argument that the FDPA allows less reliable evidence because admitting more evidence increases reliability).

▇▇▇ Application of the death penalty "requires heightened reliability" in the underlying determinations because "death is different." *Hill v. Humphrey*, 662 F.3d 1335, 1385 (11th Cir.2011) (en banc). The FDPA achieves heightened reliability by admitting more, not less, evidence. *Fell I*, 360 F.3d at 143 (citing *Gregg*, 428 U.S. at 203–04, 96 S.Ct. 2909) ("[T]he Supreme Court has also made clear that in order to achieve such 'heightened reliability,' *more* evidence, not less, should be admitted on the presence or absence of aggravating and mitigating factors ...."); *accord Lee*, 374 F.3d at 648 ("[T]he admission of more

---

4. As of the date of this Order, the United States Court of Appeals for the Sixth Circuit has not addressed the Tenth Circuit's double-counting theory.

rather than less evidence during the penalty phase increases reliability by providing full and complete information about the defendant and allowing for an individualized inquiry into the appropriate sentence for the offense."); *United States v. Basciano,* 763 F.Supp.2d 303, 358 n. 41 (E.D.N.Y.2011) (noting that courts " 'should lean in favor of admitting as much information as possible to allow the jury to make an individualized determination of whether the defendant merits the death penalty.' " (quoting *United States v. Cisneros,* 363 F.Supp.2d 827, 833 (E.D.Va. 2005))).

The admissibility standard is a sufficient procedural safeguard.

> [T]he FDPA allows the district judge to exclude evidence if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury. This provides a constitutionally sufficient procedural safeguard for evidentiary reliability.

*United States v. Mitchell,* 502 F.3d 931, 980 (9th Cir.2007).

### E. The Statutory Maximum Penalty

"Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). "[T]he definition of statutory maximum for *Apprendi* purposes is not the high-end that a sentence may not exceed, but rather the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Lovins v. Parker,* 712 F.3d 283, 289 (6th Cir.2013) (quoting *Blakely v. Washington,* 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004)) (internal quotation marks omitted).

In *United States v. Lighty,* the United States Court of Appeals for the Fourth Circuit rejected an argument that non-statutory aggravating factors must be alleged in the indictment. *See* 616 F.3d 321, 367–68 (4th Cir.2010). The Fourth Circuit stated that "a non-statutory aggravating factor does not allow for the imposition of a more severe sentence than could have been imposed without the presence of the factor." *Id.* at 368 (citing *Blakely,* 542 U.S. at 303–04, 124 S.Ct. 2531). In other words, a "non-statutory aggravating factor is not one of those 'facts legally essential to the punishment' that must be included within the indictment." *Id.* (quoting *Blakely,* 542 U.S. at 313, 124 S.Ct. 2531); *accord United States v. Brown,* 441 F.3d 1330, 1368 (11th Cir.2006) (stating that the Eleventh Circuit and other circuits have "soundly rejected the argument that non-statutory aggravating factors must be alleged in the indictment."). "The non-statutory aggravating factors, although relevant to determining whether a jury *decides* to impose the death penalty, do not make a defendant statutorily eligible for any sentence that could not be otherwise imposed in their absence." *Brown,* 441 F.3d at 1368.

### III. ANALYSIS

The Court addresses each of Defendant's Motions in turn below.

### A. Motion to Dismiss the "Special Findings" from the Superseding Indictment, and to Strike the Notice of Intent to Seek the Death Penalty Because It Fails to Adequately Narrow Defendant's Eligibility for the Death Penalty, Meet Heightened Standards of Reliability, Is Vague and Duplicative and Overly Broad (ECF No. 141)

On May 6, 2013, Defendant filed his Motion to Dismiss the "Special Findings"

from the Superseding Indictment, and to Strike the Notice of Intent to Seek the Death Penalty Because It Fails to Adequately Narrow Defendant's Eligibility for the Death Penalty, Meet Heightened Standards of Reliability, Is Vague and Duplicative and Overly Broad. (ECF No. 141.) The Government responded in opposition on June 12, 2013. (ECF No. 163.)

Defendant makes six separate arguments in support of his Motion. The Court addresses each of them in turn below.

### 1. Intent Factors as Duplicative

Defendant challenges the following portion of the Government's Notice:

2. [Defendant] intentionally killed the victim, Paula Robinson. Section 3591(a)(2)(A). (Counts One and Five)

3. [Defendant] intentionally inflicted serious bodily injury that resulted in the death of the victim, Paula Robinson. Section 3591(a)(2)(B). (Counts One and Five)

4. [Defendant] intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victims, Judy Spray and Paula Robinson, died as a direct result of the act. Section 3591(a)(2)(C).

5. [Defendant] intentionally engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life, and Judy Spray and Paula Robinson died as a

direct result of the act. Section 3591(a)(2)(D).[5]

(ECF No. 133 at 2.)

Quoting *U.S. v. McCullah,* 87 F.3d 1136, 1138 (10th Cir.1996), Defendant argues that "all four of these factors overlap 'because they are predicated upon the same acts' by [Defendant]." (ECF No. 141 at 13.) Defendant argues that "only one of the four factors should be set forth by the Special Findings and the Government's Notice...." (*Id.* at 12.) The Government distinguishes *McCullah,* arguing that it "involved a different capital sentencing scheme ... under which mental intent factors were actually weighed as aggravating factors during the sentence selection process." (ECF No. 163 at 6.) The Government argues that, because the statutory intent factors have no bearing on the weighing process at the selection stage, there is no risk of double counting as identified in *McCullah.*

■ The Court rejects Defendant's argument. Duplicative aggravating factors are only problematic under *McCullah* and its progeny during the weighing process: "'the use of duplicative aggravating factors creates an unconstitutional skewing of the weighing process which necessitates a reweighing of the aggravating and mitigating factors.'" *Fields,* 277 F.3d at 1218 (quoting *McCullah,* 76 F.3d at 1112). This occurred when applying the intent factors in the former 21 U.S.C. § 848(n)(1), which were considered as aggravating factors in the weighing process. *See McCullah,* 76 F.3d at 1111–12.

Defendant, however, is being prosecuted under 18 U.S.C. § 3591, under which

the jury must find one of the four types of intent *as a threshold matter,*

---

5. Defendant also challenges the Notice of Special Findings within the Government's Superseding Indictment, which alleges identical statutory intent factors. (*See* ECF No. 49 at 11.)

and unless the jury finds one of the four types of intent, the defendant is not eligible for the death penalty. *See* 18 U.S.C. § 3591. Only after crossing this threshold does the jury reach the weighing of aggravating and mitigating factors. The findings regarding intent, therefore, play no role in the weighing process, which is done when the jury considers aggravating and mitigating circumstances. Thus, while the intent [under 21 U.S.C. § 848] actually operates as an aggravating factor, the intent under 18 U.S.C. § 3591 operates only as a threshold to reach the aggravating factors.

*United States v. Jackson,* 327 F.3d 273, 300–01 (4th Cir.2003); *see also United States v. Webster,* 162 F.3d 308, 323–23, 355 (5th Cir.1998) (" § 3591(a) does not set forth aggravating factors, but rather serves as a preliminary qualification threshold. The fact that a defendant could satisfy more than one of these via the same course of action does not, therefore, constitute impermissible double counting.")

The statutory intent factors alleged by the Government play no role in the weighing process under the FDPA. There is, therefore, no danger of double counting, and Defendant's argument to the contrary is rejected.

### 2. Abandonment of Certain Statutory Aggravating Factors

Defendant next argues that the Court should strike the following portion of the Government's Superseding Indictment because the Government did not include it in its Notice:

> (b) As to Counts One, Two, Five, and Six of this indictment, [Defendant]:
>
> . . . .
>
> (6) in the commission of the offense knowingly created a grave risk of death to 1 or more persons in

addition to the victim of the offense (Title 18, United States Code, Section 3592(c)(5));

. . . .

> (8) committed the offense after substantial planning and premeditation to cause the death of a person (Title 18, United States Code, Section 3592(c)(9))

(ECF No. 49 at 11–12; *see also* ECF No. 133.) In response, the Government concedes that it omitted the statutory aggravating factors of pecuniary gain and substantial planning and premeditation from its Notice. (ECF No. 163 at 6.) The Government asserts that Defendant's Motion is moot as to these factors because the Government does not intend to submit them to the jury at trial. (*Id.* at 7.)

Federal Rule of Criminal Procedure 7(d) provides that, "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information." Fed.R.Crim.P. 7(d). "[A] motion to strike surplusage should be granted only if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial." 1 Charles Alan Wright & Andrew D. Leipold, *Federal Practice and Procedure* § 128, at 643 (4th ed.2008). "Unnecessary allegations are 'surplusage' and can be ignored." *Gambill v. United States,* 276 F.2d 180, 181 (6th Cir.1960) (citations omitted).

In moving to strike surplusage, "the defendant is deemed to have waived his right to reindictment to the extent of eliminating such surplusage." *Short v. United States,* 471 F.3d 686, 694 (6th Cir. 2006) (citing *United States v. Johnson,* 585 F.Supp. 80, 81 n. 1 (M.D.Tenn.1984)). "A motion to strike surplusage from the indictment pursuant to Federal Rule of Criminal Procedure 7(d) is subject to the district court's discretion." *United States*

*v. Williams,* 158 Fed.Appx. 651, 654 (6th Cir.2005) (citing *United States v. Kemper,* 503 F.2d 327, 329 (6th Cir.1974)). "A court does not err in ignoring irrelevancies in or striking surplusage from an indictment." *United States v. Grenoble,* 413 F.3d 569, 577 (6th Cir.2005).

The factors Defendant requests to be stricken are relevant to a threshold determination of eligibility for the death penalty. *See Jackson,* 327 F.3d at 300–01. The factors are not relevant, and surplusage, only because the Government has decided not to present them to the jury. (*See* ECF No. 163 at 7.) Accordingly, to the extent that the factors are surplusage and striking them under Rule 7(d) is proper, the issue is moot. *See Ky. Riverkeeper, Inc. v. Rowlette,* 714 F.3d 402, 406 (6th Cir.2013) ("[A] change in circumstances that renders a court unable to grant petitioners meaningful relief may prudentially moot an action").

### 3. Continued Violent Criminal Acts

Defendant also challenges the following portion of the Government's Notice:

4. *Continued Violent Criminal Acts Committed after the October 18, 2010[,] Henning Post Office Murder*

The defendant continued to commit violent criminal acts after the October 18, 2010[,] Henning Post Office murders including, but not limited to the following:

(a) The armed robbery of Southeast Financial Credit Union in Lavergne [sic], Tennessee, on October 29, 2010.

(b) The armed robbery of the Mid–South Bank in Smyrna, Tennessee, on November 29, 2010.

(c) The armed carjacking of Bill Petty, in Nashville, Tennessee, on February 14, 2011.

(d) Conspiracy to commit armed robbery on or about February 14, 2011.

(ECF No. 133 at 4–5.) Defendant's Motion asserts two discernible challenges to the above-quoted language. The Court addresses each of them in turn below.

#### a. Duplicative Factors

As an initial matter, Defendant argues that the Government's Notice alleges a "continuing pattern of violence" subpart to the future-dangerousness aggravating factor (Paragraph Seven), and that it is duplicative with the "offenses of conviction as alleged in the Indictment" language (ECF No. 133 at 6). (*See* ECF No. 141 at 12.) The Government's Notice, however, contains no "continuing pattern of violence" language. (*See* ECF No. 133.) To the extent Defendant argues that Paragraph Seven is duplicative of the "offenses of conviction as alleged in the Indictment" language, the Court rejects the argument. The future-dangerousness factor, Paragraph Seven, is merely supported by the evidence indicated in Paragraph 7(a) ("[t]he conduct charged in the Indictment"). (*See id.* at 5.) There are no duplicative factors.

Defendant also argues that Paragraph Four (continued violent criminal acts) and Paragraph Seven (future dangerousness) "re-allege[ ] the same acts or acts by another and acts charged in the indictment and clearly are identical or substantially overlap one another." (ECF No. 141 at 13.) The Government responds that "the future dangerousness factor does not subsume the 'continued violent criminal acts' factor," and that "each factor is alleged to highlight a different characteristic of the Defendant." (ECF No. 163 at 8.)

The Government's argument is more availing. The jury need not find that Defendant committed continued violent criminal acts in order to find that he pres-

ents future danger, and vice versa. In other words, the factors "are not duplicative because none of them 'necessarily subsumes' the others." *Fields*, 277 F.3d at 1219. "While some of the same evidence may be relevant to proving the existence of each, none of them 'necessarily subsumes' any of the others." *Id.*

### b. Use of Unadjudicated Conduct [6]

Defendant appears to argue that the relevance of non-statutory aggravating factors must be determined by reference to the FDPA's statutory aggravating factors, which *"rely[ ] almost exclusively on criminal convictions of either very serious or repetitive felony offenses."* (ECF No. 141 at 13 (quoting *United States v. Davis*, 912 F.Supp. 938, 944 (E.D.La.1996)).) The implied argument is that because the FDPA's statutory factors refer to convictions, unadjudicated conduct is not relevant. (*See id.* at 13–14.) The Government argues that federal courts uniformly agree that unadjudicated criminal conduct is permissible in the penalty phase of a capital trial, and that the unadjudicated conduct alleged against Defendant "is relevant to the sentencing determination and highly probative." (ECF No. 163 at 9.)

■■■ The Government has the better argument. The United States Court of Appeals for the Sixth Circuit has stated that, at the penalty phase of a capital trial, there is no constitutional barrier "limiting the introduction of other acts information to acts for which the defendant has been adjudicated criminally guilty." *United*

States v. Gabrion, 648 F.3d 307, 348 (6th Cir.2011), *rev'd en banc on other grounds*, 719 F.3d 511 (6th Cir.2013). "[E]very circuit to consider the issue has held that unadjudicated conduct may be considered in the process of assessing aggravating factors, and many courts have specifically recognized the relevance to the factor of future dangerousness." *United States v. Corley*, 519 F.3d 716, 724 (7th Cir.2008) (citing *Cummings v. Polk*, 475 F.3d 230, 238 (4th Cir.2007)); *Brown v. Dretke*, 419 F.3d 365, 376–77 (5th Cir.2005); *Lee*, 274 F.3d at 494; *United States v. Cooper*, 91 F.Supp.2d 90, 106–08 (D.D.C.2000); *see also United States v. Lujan*, 603 F.3d 850, 856 (10th Cir.2010) ("[T]he Supreme Court ... [ has] repeatedly held that the district court may admit evidence of [ ] unadjudicated conduct in the penalty phase of a capital trial without violating the defendant's constitutional rights."). District courts within the Sixth Circuit have followed suit, refusing to strike even alleged unadjudicated murders from consideration at the penalty phase in capital cases. *See, e.g., United States v. Henderson*, 485 F.Supp.2d 831, 869 (S.D.Ohio 2007) (declining to strike "continuing pattern of violent conduct" aggravating factor that alleged two unadjudicated murders); *see also United States v. Mayhew*, 380 F.Supp.2d 936, 951–52 (S.D.Ohio 2005) (refusing to strike unadjudicated murder threat on Fifth and Sixth–Amendment grounds). Defendant's assertion that introduction of alleged unadjudicated acts would violate

---

**6.** Defendant states, in a conclusory fashion, that the Government's use of unadjudicated conduct in support of the continued violent criminal acts factor is vague and overbroad. (See ECF No. 141 at 14.) The Court rejects this argument. The continued violent criminal acts factor is not vague because it has a " 'common-sense core of meaning ... that criminal juries should be capable of under-

standing.' " *Tuilaepa*, 512 U.S. at 973, 114 S.Ct. 2630 (quoting *Jurek v. Texas*, 428 U.S. 262, 279, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976)). Moreover, as a non-statutory factor relevant only during the selection decision, it is not overbroad because it directs the jury to focus on the individualized circumstances of this case. *See Fields*, 516 F.3d at 945.

his Fifth and Sixth Amendment rights (*see* ECF No. 141 at 15) is, therefore, rejected.

Evidence of the unadjudicated conduct, however, must be reliable and more probative than unfairly prejudicial. *Corley,* 519 F.3d at 724–25. It must also be proved beyond a reasonable doubt. 18 U.S.C. § 3593(c); *see also Henderson,* 485 F.Supp.2d at 869 ("[U]nless the Government establishes [unadjudicated] behavior beyond a reasonable doubt, the jury will not be permitted to consider it when sentencing."). Defendant argues that the probative value of the unadjudicated conduct alleged by the Government is outweighed by its danger of creating unfair prejudice. (ECF No. 141 at 18.) The Government responds that the unadjudicated robberies, carjacking, and conspiracy "are all serious criminal acts that are relevant to sentencing," that "[t]here is no risk of unfair prejudice," and that "[ t]he Government will prove the Defendant's participation in each act beyond a reasonable doubt." (ECF No. 163 at 11.)

In light of the clear weight of federal-court authority allowing such evidence at the sentencing phase of capital trials, the Court will not strike the unadjudicated conduct alleged by the Government. *See United States v. Johnson,* 915 F.Supp.2d 958, 1004 (N.D.Iowa 2013) ("There seems to be little doubt that unadjudicated criminal conduct can be considered *in support of* another aggravating factor, such as 'continuing threat' or 'future dangerousness.' "). The cases cited by Defendant in support of the opposite result are distinguishable from the instant case. In *Davis,* for example, the court found that "verbiage alone is of insufficient relevancy to be admissible" as evidence of a defendant's "continuing threat of future dangerousness to the lives and safety of other persons." 912 F.Supp. at 947. By contrast, the Government in this case has alleged much more concrete, serious acts—armed robberies, an armed carjacking, and conspiracy to commit armed robbery. (*See* ECF No. 133 at 5.) Furthermore, in *United States v. Gonzalez,* the United States District Court for the. District of Connecticut precluded the presentation of evidence of unadjudicated murders because the unadjudicated conduct was "based on fact patterns similar to that of the underlying crime, further increasing the risk that the jury will use its guilt phase findings of guilt in its adjudicatory penalty phase deliberations." No. 3:02CR7(JBA), 2004 WL 1920492, at \*3 (D.Conn. Aug. 17, 2004). Conversely, in this case, the Government has not alleged unadjudicated criminal activity with fact patterns so factually similar to the underlying murder charges that the jury will be unable to separate the two at the guilt and penalty phases of the trial. Moreover, even if the Government *had* alleged unadjudicated murders, the Court is not convinced that Defendant would necessarily be unfairly prejudiced pursuant to § 3593(c). *See, e.g., Henderson,* 485 F.Supp.2d at 869.

Defendant's argument that the Government's averments to unadjudicated conduct should be stricken is, therefore, rejected.

### 4. Constitutionality of Non–Statutory Aggravating Factors

Defendant advances two reasons why the use of non-statutory aggravating factors under the FDPA is unconstitutional. First, Defendant argues that non-statutory aggravating factors do not narrow the jury's discretion. (ECF No. 141 at 19.) Second, Defendant argues that the FDPA's authorization of the Government "to unilaterally expand the list of aggravating factors on a case-by-case basis" violates the Eighth Amendment. (*Id.*) The Government responds that, following the

eligibility phase, "the use of non-statutory aggravating factors serves only to individualize the sentencing determination." (ECF No. 163 at 14.)

The Court rejects Defendant's arguments. First, "[o]nly [statutory aggravating factors] are required to narrow the class of murderers who might properly face the death penalty; [non-statutory aggravating factors] serve as additional information for the sentencer." *United States v. Gooch*, No. 04–128–23(RMC), 2006 WL 3780781, at *25 (D.D.C. Dec. 20, 2006). "So long as that information is relevant to the character of the defendant or the circumstances of the crime, consideration of nonstatutory aggravating factors . . . serves the useful purpose of ensuring an individualized sentencing determination that minimizes the risk of arbitrary and capricious action." *Id.* Second, the plain language of the FDPA, which explicitly contemplates the expansion of non-statutory aggravating factors, defeats Defendant's second argument. *See* 18 U.S.C. § 3592(c) ("The jury, or if there is no jury, the court, may consider whether *any other aggravating factor* for which notice has been given exists." (emphasis added)). The Supreme Court has unequivocally upheld the constitutionality of non-statutory aggravating factors so long as they are not vague or overbroad. *See Jones*, 527 U.S. at 395–402, 119 S.Ct. 2090. Moreover, the Fourth Circuit persuasively rejected the exact argument Defendant advances in this case. *See Higgs*, 353 F.3d at 320 ("[W]e reject the contention that the FDPA is unconstitutional merely because it allows the sentencing jury to weigh non-statutory aggravating factors when deciding whether to impose the sentence of death upon a defendant convicted of a death-eligible offense.").

Accordingly, Defendant's argument is rejected.

### 5. Prosecutorial Discretion and Ex Post Facto Laws

Defendant argues that the FDPA violates Article I, Section 9, clause 3 of the United States Constitution, which states, "No . . . ex post facto Law shall be passed." (ECF No. 141 at 20.) The Government argues that, because non-statutory aggravating factors do not increase the possible punishment or alter the elements of the offense, "the Government does not violate the Ex Post Facto Clause by defining the non-statutory factors after the crime has already been committed." (ECF No. 163 at 15.)

Again, the Fourth Circuit persuasively rejected this exact argument as follows:

Although aggravating factors do make more burdensome the punishment for the crime, nonstatutory aggravating factors and mitigating factors are weighed by the jury to make the individualized determination to impose the death sentence upon a defendant who has already been found eligible. They do not increase the possible punishment or alter the elements of the offense.

*Higgs*, 353 F.3d at 322 (alteration, citation, and internal quotation marks omitted). District courts within the Sixth Circuit have also rejected this exact argument, with strikingly similar language. (*Compare United States v. Green*, No. 5:06CR19–R, 2008 WL 4000870, at *17 (W.D.Ky. Aug. 26, 2008) (rejecting defendant's argument that the FDPA " 'permits the prosecution to manufacture out of whole cloth aggravating circumstances to be applied retroactively to crimes committed before the aggravating circumstances are identified.' "), *with* ECF No. 141 at 20 (arguing that the FDPA "permits the prosecution to manufacture out of whole cloth

aggravating circumstances to be applied retroactively to crimes committed before the aggravating circumstances are identified.").) In *Green*, the United States District Court for the Western District of Kentucky stated that "[n]on-statutory aggravating factors cannot violate the Ex Post Facto Clause because they in no way serve to *increase* the punishment a death-eligible defendant may receive." 2008 WL 4000870, at *18.

Accordingly, Defendant's argument is rejected.

### 6. Statutory Inconsistencies in the FDPA

Finally, Defendant argues that section 3591(a) "nullifies the general catchall provision under § 3592 and prohibits the use of non-statutory aggravators." (ECF No. 141 at 21.) The Government asserts that Defendant's argument "has been uniformly rejected by the federal courts," and that Defendant's interpretation of the FDPA violates the rule against surplusage. (ECF No. 163 at 16–17.) Section 3591(a) of the FDPA states that a defendant may be sentenced to death only "after consideration of the factors set forth in section 3592." Yet § 3592(c) permits the jury to "consider whether *any other* aggravating factor for which notice has been given exists."

The Court rejects Defendant's restrictive interpretation. First, § 3591(a) does not limit consideration *only* to the aggravating factors set forth in § 3592, although Congress could have done so. Second, Defendant's argument has been routinely rejected by the federal courts as a "'strained and hyper-literal reading ... [that] would render large portions of § 3592 inoperative.'" *United States v. Williams*, No. 4:08–cr–00070, 2013 WL 1335599, at *20 (M.D.Pa. Mar. 29, 2013) (quoting *United States v. Nguyen*, 928

F.Supp. 1525, 1536 (D.Kan.1996)). Accordingly, Defendant's interpretation of the FDPA is rejected.

For the foregoing reasons, Defendant's Motion to Dismiss the "Special Findings" from the Superseding Indictment, and to Strike the Notice of Intent to Seek the Death Penalty Because It Fails to Adequately Narrow Defendant's Eligibility for the Death Penalty, Meet Heightened Standards of Reliability, Is Vague and Duplicative and Overly Broad (ECF No. 141) is DENIED.

### B. Motion to Strike Statutory Aggravators (ECF No. 142)

On May 6, 2013, Defendant filed his Motion to Strike Statutory Aggravators. (ECF No. 142.) In the Motion, Defendant asserts that both of the statutory aggravating factors enumerated by the Government in its Notice—that Defendant "committed the offense as consideration for the receipt, or in the expectation of the receipt, of anything of pecuniary value ... and that he intentionally killed or attempted to kill more than one person in a single criminal episode" (*see* ECF No. 133 at 3)—are "invalid and should be stricken." (ECF No. 142 at 2 (citations omitted).) Defendant asserts:

> The Government's Notice provides no factual information to support the statutory aggravating factor of pecuniary gain. Nor are there any facts in the Notice to support the allegation that [Defendant] killed more than one victim. In fact there are no facts at all in the Notice. Nor is there any indication of [the Government's] theory about how these aggravating factors apply to this case. This is not proper notice. [Defendant] cannot prepare his case without more detailed information. Nor can [Defendant] mount a legal challenge to whether these aggravating factors apply

in this case. Therefore, [Defendant] respectfully requests that this court direct the [G]overnment to provide an informative outline of its proofs with regard to the aggravating [factors] it has alleged.[7]

(*Id.* at 3.)

"The Government opposes these requests." (ECF No. 164 at 1–2.) In a Response filed on June 12, 2013, the Government asserts that it "has provided all the notice that is constitutionally and statutorily required and Defendant is not entitled to an advance screening of the Government's case." (*Id.* at 2.) The Government asserts that the statute, 18 U.S.C. § 3593(a), does not require the Government to reveal its evidence in support of statutory aggravating factors. (*Id.*) The Government further asserts that it "is not obligated to outline what specific pieces of evidence it plans to use to support the aggravating factors."[8] (*Id.* at 3 (citing *LeCroy,* 441 F.3d at 930).) Regarding the Superseding Indictment, the Government states:

> The indictment includes multiple overt acts. It identifies the Defendant by name and clearly sets forth his specific roles and actions in the alleged crimes. This is not a case involving a bare bones indictment. What is more, the indictment is supported by the Notice of Intent, which provides evidentiary detail of the kind requested by the Defendant's motion. Further, the Government has gone beyond legal requirements in the massive amount of information and de-

tail provided during discovery. Accordingly, the Court should reject the request for an outline of the government's evidence or a pretrial hearing where the Government would be required to preview its evidence.

(*Id.* at 4.)

 The Government has the more availing argument. According to the Supreme Court, in the context of a capital sentencing hearing, "[a] defendant's right to notice of the charges against which he must defend is well established. But a defendant's claim that he has a right to notice of the *evidence* that the state plans to use to prove the charges stands on quite a different footing." *Netherland,* 518 U.S. at 167–68, 116 S.Ct. 2074 (citations omitted). Supreme Court precedent does "not compel a court to order the prosecutor to disclose his evidence. . . ." *Id.* at 168, 116 S.Ct. 2074.

In *Higgs,* the Fourth Circuit declared, regarding non-statutory aggravating factors, that "[t]he FDPA and the Constitution require that the defendant receive adequate notice of the aggravating factor, . . . not notice of the specific evidence that will be used to support it." 353 F.3d at 325. The Eleventh Circuit similarly stated that "[t]he Government is not required to provide specific evidence in its notice of intent [to seek the death penalty]." *Battle,* 173 F.3d at 1347; *see also United States v. Taylor,* 316 F.Supp.2d 730, 741 (N.D.Ind.2004) ("[E]ach Notice of Intent informs the Defendant that the Govern-

---

7. Defendant cites a litany of cases from other district courts that "recognize[ ] the utility of requiring the government to identify the nature of its proofs in support of statutory and non-statutory aggravating factors so that courts may exercise their gatekeeping responsibilities to limit penalty-phase evidence to that which meets standards of heightened reliability and particular relevance." (ECF No. 142 at 3–7 (citing cases).)

8. Like Defendant, the Government cites numerous cases from other circuit and district courts to support the proposition "that the Government is not required to preview or reveal the specific proof it will offer in support of aggravating factors." (ECF No. 164 at 3–4 (citing cases).)

ment intends to seek the death penalty and lists the aggravating factors that the Government will seek to prove. The statute requires no more."); *Nguyen*, 928 F.Supp. at 1545–46 (rejecting defendant's argument that the government's failure to provide detail about the evidence it planned to use in support of its notice of intent to seek the death penalty rendered the notice unconstitutional).

Consistent with these persuasive authorities, the Court rejects Defendant's request for an Order requiring the Government to provide an informative outline of its evidence in support of statutory aggravating factors, "as well as its theory [supporting] these aggravating factors."[9] (ECF No. 142 at 7.) Accordingly, Defendant's Motion to Strike Statutory Aggravators (ECF No. 142) is DENIED.

## C. Motion to Strike the Non–Statutory Aggravating Factors for Failure to Include Them in the Indictment (ECF No. 143)

On May 6, 2013, Defendant filed his Motion to Strike the Non–Statutory Aggravating Factors for Failure to Include Them in the Indictment. (ECF No. 143.) In the Motion, Defendant argues that "[b]ecause the non-statutory aggravators in this case were not presented to or found by the grand jury, they must be stricken from the [G]overnment's Notice of Intent to Seek [the Death Penalty]." (*Id.* at 8.) Citing *Blakely*, 542 U.S. at 302 n. 5, 124 S.Ct. 2531, Defendant argues that "the

jury's finding on non-statutory aggravating factors during the selection phase must occur before a death penalty may be imposed. As such, they constitute facts that must be charged in the indictment and proved to a jury beyond a reasonable doubt." (ECF No. 143 at 4.) Defendant distinguishes contrary circuit-court precedent, such as *Higgs*, 353 F.3d 281, by arguing (1) that the death penalty "is a punishment that may be imposed only after additional findings are made during the selection phase"; and (2) that non-statutory aggravating factors "are among the findings made during the selection phase that are 'legally essential' before a sentence of death may be imposed." (ECF No. 143 at 5–6 (citing *United States v. Green*, 372 F.Supp.2d 168, 174 (D.Mass. 2005) (finding non-statutory aggravating factor of prior unadjudicated crimes must be stricken from the government's notice of intent to seek the death penalty)).)

The Government responded on June 12, 2013. (ECF No. 165.) In its Response, the Government asserts that "[t]he federal courts of appeal are in agreement that non-statutory aggravating factors are not required to be alleged in a capital indictment." (*Id.* at 1–2 (citing *Fell II*, 531 F.3d at 237–38; *Mitchell*, 502 F.3d at 979; *Brown*, 441 F.3d at 1368 (11th Cir.2006); *United States v. Purkey*, 428 F.3d 738, 749–50 (8th Cir.2005); *United States v. Bourgeois*, 423 F.3d 501, 507–08 (5th Cir. 2005); *Higgs*, 353 F.3d at 298–99).)[10] The

---

**9.** As the Government notes (ECF No. 164 at 5), the numerous cases cited by Defendant for the proposition that the Government should be required to detail its evidence in relation to the statutory aggravating factors it has alleged are inapposite. In these cases, the courts by and large required the government to provide more information related to *non-statutory* aggravating factors. (*See* ECF No. 142 at 4–7.) The Court is not convinced that such a requirement is necessary in this case, let alone

in the context of statutory aggravating factors, which are precisely defined in the FDPA. *See* 18 U.S.C. § 3592(c).

**10.** The Government's Response also cites numerous district-court decisions that have declined to follow the *Green* case on which Defendant relies. (ECF No. 165 at 2–3 (citing cases).) In one such case, *United States v. Pleau*, the court found *Green* "unpersuasive to the extent that it is inconsistent with the deci-

Government further asserts that "[t]he jury need not find a single non-statutory aggravating factor in order to impose the death penalty.... [T]he balancing of aggravating and mitigating factor[s] is *not a fact* that must be found by the jury." (ECF No. 165 at 3 (citations omitted).)

The Sixth Circuit has squarely rejected Defendant's position. In *Lawrence,* the Sixth Circuit joined the Second, Fourth, Fifth, Eighth, and Eleventh Circuits in holding that "[n]on-statutory aggravating factors are relevant considerations in the sentence *selection* decision, but do not, in themselves, determine whether a defendant is 'eligible' to be considered for the death sentence.... [N]on-statutory aggravating factors need not be charged in the indictment to satisfy the Fifth Amendment's Indictment Clause." 735 F.3d at 420 (citation omitted); *see also United States v. Haynes,* 269 F.Supp.2d 970, 979–80 (W.D.Tenn.2003) (same).

 Binding precedent undermines Defendant's position. Defendant's Motion to Strike the Non–Statutory Aggravating Factors for Failure to Include Them in the Indictment (ECF No. 143) is, therefore, DENIED.

**D. Motion to Dismiss/Strike Non–Statutory Aggravating Factor Concerning Victim–Impact Evidence, or in the Alternative, to Limit Victim–Impact Testimony (ECF No. 144)**

On May 6, 2013, Defendant filed his Motion to Dismiss/Strike Non–Statutory Aggravating Factor Concerning Victim–Impact Evidence, or in the Alternative, to Limit Victim–Impact Testimony. (ECF No. 144.) Defendant's Motion challenges the following portions of the Government's Notice regarding victim-impact evidence:

C. *Non–Statutory Aggravating Factors Identified Under 18 U.S.C. § 3593(a)(2)*

The United States will seek to prove the following non-statutory aggravating factors as the basis for the imposition of the death penalty in relation to Counts One, Two, Five and Six of the Indictment:

1. *Victim Impact Evidence*

As reflected by victim Paula Robinson's and victim Judy Spray's personal characteristics as individual human beings and the impact of the victims' murders on the victims and the victims' families, friends, and colleagues, the defendant caused loss, injury, and harm to the victims and the victims' families, friends, and colleagues, including, but not limited to the following:

(a) *Characteristics of the Victims*

(i) The Defendant caused the death of Paula Robinson, a 33–year old wife, mother and employee with the United States Postal Service, who enjoyed a strong relationship with her family and coworkers.

(ii) The defendant caused the death of Judy Spray, a 59–year old wife, mother, grandmother and employee of the United States Postal Service, who enjoyed a strong relationship with her family and co-workers.

(b) *Impact of the Offense on the Families of the Victims*

The victims' families have suffered severe and irreparable harm including, but not limited to, emotional distress,

---

sions of several federal courts of appeals. Indeed, federal district courts have explicitly declined to follow *Green."* Cr. No. 10–184–1S, 2013 WL 1673109, at *2 n. 2 (D.R.I. Apr. 17, 2013) (citations omitted).

grief, loss of companionship, and loss of emotional and financial support. (ECF No. 133 at 3–4.)

Defendant challenges Paragraph (C)(1) of the Government's Notice, arguing that "[f]ailing to specifically state what evidence they will actually present violates the Defendant's constitutional right to due process." (ECF No. 144 at 2.) Specifically, Defendant asserts that the language in Paragraph (C)(1) "is vague, broad and conclusory. In addition, language such as 'not limited to' should be stricken. It does not specifically notify the Defendant of a specific aggravating factor and leaves the Government the ability to bring forth any aggravator to which it has not provided specific notice." (*Id.*)

Defendant challenges Paragraph (C)(1)(a) of the Notice by arguing that "[t]he mention of 'enjoying a strong relationship' with their families and co-workers is outside the scope of the effect on the victims and their families. This does not make the crime worse in forms of aggravation and is superfluous with regards to true victim impact evidence." (*Id.*) Defendant argues that this "evidence fails to narrow the class of defendant to which the death penalty is applied to [sic]." (*Id.*)

Defendant further challenges Paragraphs (C)(1) and (C)(1)(b) of the Notice for their use of the language "including, but not limited to." (*See* ECF No. 133 at 3, 4.) According to Defendant, "[t]his is akin to [the Government] saying we are using any fact we can come across or may have forgotten since the mandated notice was submitted as an aggravator all of which is unconstitutional." (ECF No. 144 at 3.) Defendant argues that the use of words like "emotional distress, grief, loss of companionship and loss of emotional and financial support" are inadequate because they "fail to provide the necessary specific notice." (*Id.*)

Finally, Defendant makes the following request:

Defendant further requests that in the event this case proceeds to a penalty phase trial, this Court "instruct each witness that if the witness is unable to control his or her emotions the witness will not be permitted to testify" and "advise each witness to refrain from giving any opinions about the Defendant, the crime, or the appropriate sentence."

(*Id.* at 9 (quoting *United States v. O'Driscoll*, 203 F.Supp.2d 334, 341 n. 6 (M.D.Pa. 2002)); *see also United States v. Glover*, 43 F.Supp.2d 1217, 1235–36 (D.Kan.1999)).

The Government responded in opposition to Defendant's Motion on June 12, 2013. (ECF No. 166.) The Government emphasizes that the FDPA "explicitly authorizes the Government to offer victim impact evidence during the sentencing phase of a capital trial." (*Id.* at 3 (citing 18 U.S.C. § 3593(a)).) The Government argues that the victim-impact portion of its Notice is not vague because it "has a common sense core meaning that is readily understandable. The Government has gone well beyond the minimum requirements set forth by § 3593(a) and provided detailed notice of the type of victim-impact testimony the jury will hear." (*Id.* at 5 (citing 18 U.S.C. § 3593(a)).) The Government further asserts that "federal courts have routinely permitted the introduction of victim impact testimony in capital cases tried under the FDPA, including cases in which the victim impact factor was alleged with less-specificity [sic] than in the current case." (*Id.* at 4.)

To the extent Defendant's Motion argues that the Government's Notice of victim-impact evidence must be stricken because "it fails to narrow the class of offenders eligible for the death penalty," the Government responds that "[t]he vic-

tim impact factor, as a non-statutory aggravating factor, has no bearing on the eligibility decision; it is a vehicle for selection . . . ." (*Id.* at 6.) In other words, "[b]y the time the jury examines the victim impact factor in this case, the narrowing process will be accomplished." (*Id.*)

Finally, the Government argues that its Notice is sufficient. According to the Government, its Notice "has listed a number of personal characteristics of the victims, which refer to those aspects of the victims' character and personality that their family, friends, and colleagues would miss the most. . . . Thus, the defense surely will not be surprised by the victim impact testimony." (*Id.* at 7 (citation omitted).) The Government asserts that "an informative outline or further proffer of the proposed victim impact testimony is not warranted. . . . [T]he Government has provided the Defendant with ample insight into the [probable] testimony." (*Id.* at 8–9.) The Government further asserts that concerns regarding the limits of victim-impact testimony can be alleviated by instructions to the witness and curative instructions to the jury, if necessary. (*Id.* at 9.)

### 1. Paragraph (C)(1)

#### a. Vagueness

The Court rejects Defendant's argument that Paragraph (C)(1) is "vague, broad and conclusory." (ECF No. 144 at 2.) The FDPA explicitly allows the Government to introduce victim-impact evidence. *See* 18 U.S.C. § 3593(a) ("The factors for which notice is provided under this subsection may include factors concerning the effect of the offense on the victim and the victim's family. . . ."). According to the

Supreme Court, "the Eighth Amendment erects no *per se* bar [to the presentation of victim-impact evidence]. . . . [E]vidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed." *Payne v. Tennessee,* 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) (stating that "[t]here is no reason to treat such evidence differently than other relevant evidence is treated.").

In *Jones,* the Supreme Court emphasized that review of aggravating factors for vagueness is "quite deferential" and that, "[a]s long as an aggravating factor has a core meaning that criminal juries should be capable of understanding, it will pass constitutional muster." 527 U.S. at 400, 119 S.Ct. 2090 (quoting *Tuilaepa,* 512 U.S. at 973, 114 S.Ct. 2630) (internal quotation marks omitted). Paragraph (C)(1) of the Government's Notice focuses on the victims' "personal characteristics as individual human beings," as well as the "impact of the victims' murders on the victims and the victims' families, friends, and colleagues." (ECF No. 133 at 3.)

The Supreme Court considered the following victim-impact aggravating factor in *Jones:* "Tracie Joy McBride's personal characteristics and the effect of the instant offense on Tracie Joy McBride's family constitute an aggravating factor of the offense." 527 U.S. at 378 n. 3, 119 S.Ct. 2090. A plurality of the Court rejected the Fifth Circuit's finding that "[t]he use of the terms 'background,' 'personal characteristics,' and 'unfamiliarity' without further definition or instruction left the jury with . . . open-ended discretion." [11] 527

---

**11.** Justice Scalia did not join the portion of the Supreme Court's opinion holding that the victim-impact factor was not unconstitutionally vague. *See Jones,* 527 U.S. at 375, 119

S.Ct. 2090. Instead, he joined the portion of the opinion holding that "[t]he error in this case, if any, rests in loose drafting of the nonstatutory aggravating factors," and that

U.S. at 400, 119 S.Ct. 2090 (alteration in original) (quoting *United States v. Jones*, 132 F.3d 232, 251 (5th Cir.1998)). In the Supreme Court's estimation, the jury should not "have had difficulty comprehending that [the victim-impact factor] asked it to consider the victim's personal traits and the effect of the crime on her family." *Id.* (footnote omitted). *Jones* also emphasized that under the deferential standard set forth in *Tuilaepa*, the Supreme Court has "held only a few, quite similar factors vague, while upholding numerous other factors against vagueness challenges." *Id.* at 401 n. 15, 119 S.Ct. 2090 (citation omitted) (citing *Tuilaepa*, 512 U.S. at 974, 114 S.Ct. 2630).

Paragraph (C)(1) of the Government's Notice is substantively identical to the language approved by a plurality of the Supreme Court in *Jones*. (Compare ECF No. 133 at 3, *with Jones*, 527 U.S. at 378 n. 3, 119 S.Ct. 2090.) As drafted, Paragraph (C)(1) has a "core meaning" that directs the jury to "victim Paula Robinson's and victim Judy Spray's personal characteristics as individual human beings." (ECF No. 133 at 3; *see also Jones*, 527 U.S. at 400, 119 S.Ct. 2090.) Paragraph (C)(1) is also similar to victim-impact factors upheld against vagueness challenges in various circuit and district courts. *See, e.g., United States v. Barnette*, 211 F.3d 803, 817–18 (4th Cir.2000); *Bourgeois*, 423 F.3d at 510–11; *O'Driscoll*, 203 F.Supp.2d at 341 ("We are not convinced that the government's notice of intent to seek the death penalty is so vague that it is impossible for defense counsel to undertake an investigation and prepare a defense."). Accordingly, Paragraph (C)(1) of the Government's Notice is not void for vagueness.

#### b. Overbreadth

■ The Court also rejects Defendant's assertion that Paragraph (C)(1) is unconstitutionally overbroad. As stated above, an aggravating factor is overbroad if a jury "fairly could conclude that an aggravating circumstance applies to *every* defendant eligible for the death penalty." *Jones*, 527 U.S. at 401, 119 S.Ct. 2090 (quoting *Arave*, 507 U.S. at 474, 113 S.Ct. 1534) (internal quotation marks omitted). Non-statutory aggravating factors are not overbroad "[s]o long as [they] are used to direct the jury to the individual circumstances of the case...." *Id.* at 402, 119 S.Ct. 2090.

In *Jones*, the Supreme Court approved a victim-impact factor against an overbreadth challenge because it "directed the jury to the evidence specific to this case...." *Id.* at 402, 119 S.Ct. 2090. Specifically, its focus on the "personal characteristics" of the victim—the same focus of the Government's Notice in the instant case (*see* ECF No. 133 at 3)—directed the jury "to those aspects of the victim's character and personality that her family would miss the most." 527 U.S. at 399, 119 S.Ct. 2090. The Supreme Court stated that evidence of "victim impact in a particular case is inherently individualized," and found victim-impact evidence "surely relevant to the selection phase decision...." *Id.* at 401–02, 119 S.Ct. 2090 (citing *Tuilaepa*, 512 U.S. at 976, 114 S.Ct. 2630).

As stated above, Paragraph (C)(1) of the Government's Notice is identical in substance to the notice upheld against overbreadth challenges in *Jones*. Other circuit and district courts have declined overbreadth challenges to similar notices, as well. *See, e.g., Bourgeois*, 423 F.3d at 510–11; *United States v. Chanthadara*, 230 F.3d 1237, 1273 (10th Cir.2000); *Williams*, 2013 WL 1335599, at *39; *Gooch*, 2006 WL 3780781, at *25–26; *May-*

such "error was harmless." *Id.* at 402, 119 S.Ct. 2090.

*hew,* 380 F.Supp.2d at 954–55. Paragraph (C)(1) appropriately focuses on the individual circumstances of this case. Accordingly, it is not unconstitutionally overbroad.

The Court also notes Defendant's assertion that "language such as 'not limited to' should be stricken." (ECF No. 144 at 2.) Defendant argues that this language is overbroad because it "leaves the Government the ability to bring forth any aggravator to which it has not provided specific notice." (*Id.*) Defendant's argument lacks merit. First, the "not limited to" language refers to the evidence that will be used to prove the victim-impact aggravating factor; it does not amount to notice of unnamed aggravating factors. (*See* ECF No. 133 at 3–4.) Second, circuit courts have upheld similarly worded aggravating factors. *See, e.g., United States v. Runyon,* 707 F.3d 475, 504 (4th Cir.2013) (allowing an aggravating factor that stated "including, but not limited to [certain evidence]"). Defendant's request that the Court strike the "not limited to" language in Paragraph (C)(1) is, therefore, denied.

### 2. Paragraph (C)(1)(a)

■ Defendant argues that Paragraph (C)(1)(a) is superfluous and "fails to narrow the class of defendant to which the death penalty is applied to [sic]." (ECF No. 144 at 2.) Defendant asserts that "[t]he mention of 'enjoying a strong relationship' with their families and co-workers is outside the scope of the effect on the victims and their families." (*Id.*) The Court rejects Defendant's argument.

In *Payne v. Tennessee,* the Supreme Court indicated that victim-impact evidence should not allow "a jury to find that defendants whose victims were assets to their community are more deserving of punishment than those whose victims are perceived to be less worthy." 501 U.S. at 823, 111 S.Ct. 2597 (citing *Booth v. Mary-*

*land,* 482 U.S. 496, 506 n. 8, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987)).

> [V]ictim impact evidence is not offered to encourage comparative judgments of this kind—for instance, that the killer of a hardworking, devoted parent deserves the death penalty, but that the murderer of a reprobate does not. It is designed to show instead *each* victim's "uniqueness as an individual human being," whatever the jury might think the loss to the community resulting from his death might be.

*Id.*

The language that victims Paula Robinson and Judy Spray "enjoyed a strong relationship with [their] family and co-workers" (ECF No. 133 at 3–4) indicates that the Government will present precisely the kind of evidence contemplated by the Supreme Court in demonstrating a unique, rather than utilitarian, loss. *See Payne,* 501 U.S. at 832, 111 S.Ct. 2597 (O'Connor, J., concurring) (stating that murder "transforms a living person with hopes, dreams, and fears into a corpse, thereby taking away all that is special and unique about the person. The Constitution does not preclude a State from deciding to give some of that back.") The phrase to which Defendant objects simply underscores the Government's compliance with *Payne,* i.e., that persons who had a "strong relationship" with the victims will demonstrate why the loss of the victims was unique and personal. The language is not, as Defendant asserts, "outside the scope of the effect on the victims and their families." (ECF No. 144 at 2.)

Defendant's argument that Paragraph (C)(1)(a) "fails to narrow the class of defendant to which the death penalty is applied" (*id.*) is also strained. The argument "confuses the purposes of statutory factors and nonstatutory aggravating factors. Only the former are required to narrow

the class of murderers who might properly face the death penalty; the latter serve as additional information for the sentencer." *Gooch*, 2006 WL 3780781, at *25 (citation omitted). So long as non-statutory aggravating factors are "relevant to the character of the defendant or the circumstances of the crime," they will "serve[ ] the useful purpose of ensuring an individualized sentencing determination that minimizes the risk of arbitrary and capricious action." *Id.* (citations omitted). The information contained in Paragraph (C)(1)(a) relates to the non-statutory aggravating factor of victim impact. Accordingly, it is not required to narrow the class of defendant to whom the death penalty might apply. Defendant's challenge is, therefore, rejected.

### 3. Paragraph (C)(1)(b)

Paragraph (C)(1)(b) states: "The victims' families have suffered severe and irreparable harm including, but not limited to, emotional distress, grief, loss of companionship, and loss of emotional and financial support." (ECF No. 133 at 4.) To the extent Defendant merely restates the argument that the language of the Government's Notice is "vague, broad, [and] conclusory" (ECF No. 144 at 2–3), Defendant's challenge is rejected for the same reasons noted above. *See supra* Part III.D.1, pp. 48–52. Moreover, Defendant's challenge to the Government's use of the language "including, but not limited to" is rejected for the reasons enumerated above. *See supra* Part III.D.1.b, p. 52.

Defendant asserts that Paragraph (C)(1)(b) is "duplicative of the prior listed aggravator, 'Victim Impact Evidence'...." (ECF No. 144 at 3.) As an initial matter, the Sixth Circuit is silent as to Defendant's argument. It is unclear, therefore, whether the double-counting theory even applies to this case. *See Jones*, 527 U.S. at 398, 119 S.Ct. 2090 (calling the double-counting argument into question). Assuming, arguendo, that it does, Defendant's argument still fails.

As stated above, "aggravating factors are duplicative when one 'necessarily subsumes' the other, or, in other words, when a jury would 'necessarily have to find one in order to find the other.' " *Fell II*, 531 F.3d at 236 (citations omitted). "Two factors are *not* duplicative merely because they are supported by the same evidence." *Id.* (citing *Jones*, 527 U.S. at 399, 119 S.Ct. 2090). The Court does not read Paragraph (C)(1)(b) as duplicative of Paragraph (C)(1) because the former provides a different evidentiary conceptualization than the latter. In other words, Paragraph (C)(1) avers to the "loss, injury, and harm to the victims and the victims' families," and Paragraph (C)(1)(b) provides substantive examples of the harm suffered by the victims' families, such as "emotional distress, grief, loss of companionship, and loss of emotional and financial support." (ECF No. 133 at 3–4.) The two paragraphs do not assert separate aggravating factors such that a jury would necessarily have to find one in order to find the other. Defendant's argument to this effect is, therefore, rejected.

In light of the foregoing, Defendant's Motion to Dismiss/Strike Non–Statutory Aggravating Factor Concerning Victim–Impact Evidence, or in the Alternative, to Limit Victim–Impact Testimony (ECF No. 144) is DENIED.

To the extent Defendant's Motion argues that the Government's Notice fails to provide sufficient notice of victim-impact evidence and that the Court should instruct victim-impact witnesses to control their emotions and refrain from commenting on the Defendant, the crime, or the appropriate sentence (*see* ECF No. 144 at 8–9), the Court will address those arguments in its resolution of Defendant's Mo-

tion for a Bill of Particulars Regarding Victim Impact (ECF No. 145).

### E. Motion for a Bill of Particulars Regarding Victim Impact (ECF No. 145)

On May 6, 2013, Defendant filed a Motion for a Bill of Particulars Regarding Victim Impact. (ECF No. 145.) In the Motion, Defendant "moves the Court to require the Government to list the names of every individual from whom the Government intends to obtain victim impact evidence and an outline of the proposed victim impact evidence for each witness along with the evidence to be presented by said witness." (*Id.* at 2.) The Government filed a consolidated Response addressing ECF Nos. 144, 145, and 147, on June 12, 2013. (ECF No. 166.) The gravamen of the Government's response is that its Notice is adequate and the Government is not obligated to outline the specific evidence it will use in support of the aggravating factors enumerated in the Notice. (*See id.* at 6–7 (citing *LeCroy,* 441 F.3d at 930; *Higgs,* 353 F.3d at 325; *Battle,* 173 F.3d at 1347).)

Federal Rule of Criminal Procedure 7(f) controls motions for a bill of particulars. The Rule states:

> The court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits. The government may amend a bill of particulars subject to such conditions as justice requires.

Fed.R.Crim.P. 7(f). Although the Court recognizes the Supreme Court's statement that "[t]here is no reason to treat [victim-impact] evidence differently than other relevant evidence is treated," *Payne,* 501 U.S. at 827, 111 S.Ct. 2597, there is a trend among the federal courts in the Sixth Circuit and elsewhere of requiring the Gov-

ernment to provide additional information related to the victim-impact factor. *See Green,* 2008 WL 4000870, at *18–21; *United States v. O'Reilly,* No. 05–80025, 2007 WL 4591856, at *5 (E.D.Mich. Dec. 28, 2007); *United States v. Henderson,* 485 F.Supp.2d 831, 849–50 (S.D.Ohio 2007) (government submitted written victim-impact statements to court for ex parte in camera review and witnesses were only permitted to read written statements verbatim without deviating from them); *United States v. Wilson,* No. 04–CR–1016 (NGG), 2013 WL 1338710, at *8–9 (E.D.N.Y. Apr. 1, 2013); *Williams,* 2013 WL 1335599, at *39–40; *United States v. Hammer,* No. 4:96–CR–239, 2011 WL 6020157, at *2–3 (M.D.Pa. Dec. 1, 2011); *United States v. Talik,* No. 5:06CR51, 2007 WL 4570704, at *9 (N.D.W.Va. Dec. 26, 2007); *United States v. Lecco,* Nos. 2:05–00107–01, 2:05–00107–02, 2007 WL 486614, at *4–5 (S.D.W.Va. Feb. 9, 2007); *Gooch,* 2006 WL 3780781, at *22–23; *United States v. Wilson,* 493 F.Supp.2d 364, 377–78 (E.D.N.Y.2006); *O'Driscoll,* 203 F.Supp.2d at 339–41; *United States v. Bin Laden,* 126 F.Supp.2d 290, 304–05 (S.D.N.Y.2001); *Cooper,* 91 F.Supp.2d at 110–11; *Glover,* 43 F.Supp.2d at 1234–36. *But see LeCroy,* 441 F.3d at 930 ("The government was not obligated to outline what specific pieces of evidence it planned to use to support the aggravating factors."); *Higgs,* 353 F.3d at 325; *Lee,* 274 F.3d at 495–96; *Johnson,* 915 F.Supp.2d at 989 ("As a general matter, pretrial preview of the evidence supporting aggravating factors is ordinarily unnecessary, and it is unnecessary in this case." (citations omitted)); *United States v. Eye,* No. 05–00344–01/02–CR–W, 2008 WL 732179, at *2–3 (W.D.Mo. Mar. 17, 2008); *United States v. Minerd,* 176 F.Supp.2d 424, 448–49 (W.D.Pa.2001).

The court in *Gooch* stated its justification for requiring the Government to provide further proof of victim-impact evidence as follows:

> [T]he mantra that "death is different" really applies here. Presenting information about victim impact to a jury that has convicted a defendant of a capital crime is different than presenting such information to a judge months after a trial is completed and at a time when the parties (and jury) are no longer exhausted from trial and no longer have frayed nerves from deliberations.
>
> As a practical matter, therefore, the Court agrees with [the defendant] that the Government should address further the nature of the information it will provide as victim impact information. Accordingly, in the exercise of its inherent authority, the Court will order the Government to outline the type and scope of the "loss, injury, and harm" suffered by each victim, his or her family members, and other individuals as relevant, and the "personal characteristics" of each victim that it intends to prove. The Court envisions a document that is akin to an informative outline, but not a revelation of evidentiary detail or the Government's theory of its case. This can be accomplished with a written pleading or in open court before trial begins, as counsel for the Government prefer. As a legal matter, however, the Court finds that the Notice was sufficient for its purpose and need not be dismissed.

*Gooch*, 2006 WL 3780781, at \*23 (citations omitted) (internal quotation marks omitted). Another court adopted similar procedures "out of an abundance of caution" even though it was "not convinced that the government's notice of intent to seek the death penalty [was] so vague that it [was] impossible for defense counsel to undertake an investigation and prepare a defense." *O'Driscoll*, 203 F.Supp.2d at 341.

In other stages of this case, the Court has granted relief to Defendant out of an abundance of caution even where the law did not require it. (*See* Order Granting Mot. to Continue Trial, ECF No. 349 at 17 (citing *United States v. Monea*, 376 Fed. Appx. 531, 547 (6th Cir.2010)).) As noted above, there is precedent to support Defendant's request for a bill of particulars regarding victim-impact evidence, as well as precedent indicating that it is unnecessary. Accordingly, the Court DEFERS RULING on Defendant's Motion for a Bill of Particulars Regarding Victim Impact (ECF No. 145). The parties are scheduled to appear before the Court at 9:00 a.m. on Friday, March 21, 2014. (ECF Nos. 354, 355.) The parties should be prepared to present brief arguments in support of their position regarding Defendant's Motion for a Bill of Particulars Regarding Victim Impact (ECF No. 145) at that time.

### F. Motion to Strike/Dismiss Non–Statutory Aggravator Concerning Status of Victims (ECF No. 146)

On May 6, 2013, Defendant filed his Motion to Strike/Dismiss Non–Statutory Aggravator Concerning Status of Victims. (ECF No. 146.) Defendant's Motion challenges the following portion of the Government's Notice:

> 2. *Status of the Victims*
>
> Victims Paula Robinson and Judy Spray were employees of the United States and the United States Postal Service and were killed while on duty in the performance of their official duties at a United States Post Office.

(ECF No. 133 at 4.) Specifically, Defendant argues that "[t]his non-statutory factor ... does not narrow [the class of defendants eligible for the death penalty] as has long been demanded by the United

States Supreme Court." (ECF No. 146 at 1.) Moreover, Defendant asserts that the victims' status as employees of the USPS is irrelevant to the sentencing decision in this case; "[t]he fact that the victims were employees at the post office and were at work only serves to establish federal [ ] jurisdiction in this case." (*Id.* at 2.)

The Government responded in opposition to Defendant's Motion on June 12, 2013. (ECF No. 167.) The Government asserts that the status of the victims, as a non-statutory aggravating factor, "need not narrow the class of offenders eligible for the death penalty." (*Id.* at 2.) The Government also disputes Defendant's assertion that the status-of-the-victims factor is irrelevant to the sentencing decision. According to the Government, the victims' status as postal employees "is directly related to the circumstances of the offense." (*Id.* at 2–3.) Moreover, the Government argues that "Defendant's conduct is of special significance because of where he committed the crime and who he targeted. . . . To many in this country, particularly in small towns such as Henning, postal employees are the face of the federal government." (*Id.* at 3.) The Government cites cases from other district courts that approved the use of non-statutory aggravating factors related to the status of the victims. (*See id.* at 4 (citing *Wilson*, 493 F.Supp.2d 364; *United States v. Frank*, 8 F.Supp.2d 253, 281 (S.D.N.Y.1998)).)

■ Defendant's argument fails for two reasons. First, this argument "confuses the purposes of statutory factors and nonstatutory aggravating factors. Only the former are required to narrow the class of murderers who might properly face the death penalty; the latter serve as additional information for the sentencer."

*Gooch*, 2006 WL 3780781, at *25 (citation omitted). Contrary to Defendant's assertions, the Supreme Court has not "long . . . demanded" that non-statutory aggravating factors narrow the class of death-penalty eligible defendants. (ECF No. 146 at 1.) "Non-statutory aggravating factors . . . need only be considered *after* a defendant has become death-eligible by the jury's finding of at least one statutory aggravating factor and serve only to individualize the jury's sentencing determination, not to narrow the class of death-eligible defendants." [12] *Williams*, 2013 WL 1335599, at *39 (citing *Higgs*, 353 F.3d at 320).

■ Second, the Court finds the status of the victims aggravating factor to be relevant to the selection decision in this case. The Court agrees with the Government's argument that, "[w]hile Congress did not include all federal employees . . . under the umbrella of federal officials whose murders may trigger a statutory aggravating factor under the FDPA, . . . this silence does not preclude the Government from recognizing postal employees killed in the line of duty through a non-statutory aggravating factor." (ECF No. 167 at 3–4 (citation omitted).) Moreover, the fact that the FDPA contemplates the status of the victims as relevant in the eligibility phase underscores that a victim's status has relevance to the sentencing decision overall. *See, e.g.,* 18 U.S.C. § 3592(c)(11) (focusing on victim vulnerability).

The Supreme Court has stated that, in the jury's individualized evaluation of the circumstances of a murder, "the fact that the murder victim was a peace officer performing his regular duties may be regard-

---

12. Defendant's argument that the status of the victims as postal employees fails to perform a narrowing function also fails on its own terms because the factor does not apply to every death-penalty eligible defendant, only those that killed postal employees.

ed as an aggravating circumstance. There is a special interest in affording protection to these public servants who regularly must risk their lives...." *Roberts v. Louisiana*, 431 U.S. 633, 636, 97 S.Ct. 1993, 52 L.Ed.2d 637 (1977). The Court agrees with the Government that postal employees are public servants who "perform an important public function that warrants special protection" (ECF No. 167 at 4 n. 2) and can discern no valid reason why the jury should not be able to consider the victims' status as postal employees carrying out their duties as a non-statutory aggravating factor should it engage in the selection decision. *See Gregg*, 428 U.S. at 204, 96 S.Ct. 2909 ("We think it desirable for the jury to have as much information before it as possible when it makes the sentencing decision."); *Lee*, 374 F.3d at 648 ("[T]he admission of more rather than less evidence during the penalty phase increases reliability by providing full and complete information about the defendant and allowing for an individualized inquiry into the appropriate sentence for the offense." (citing *Fell I*, 360 F.3d at 143)).

Accordingly, Defendant's Motion to Strike/Dismiss Non–Statutory Aggravator Concerning Status of Victims (ECF No. 146) is DENIED.

### G. Motion to Dismiss/Strike Non–Statutory Aggravating Factors Concerning Impact of the Offense on the Employer and Colleagues of the Victim (ECF No. 147)

On May 6, 2013, Defendant filed his Motion to Dismiss/Strike Non–Statutory Aggravating Factors Concerning Impact of the Offense on the Employer and Col-

leagues of the Victim. (ECF No. 147.) In the Motion, Defendant requests "an order striking, dismissing or precluding the Government from offering any non-statutory aggravators concerning the impact of the offense on the employer and colleagues of the victim." [13] (*Id.* at 4.) Defendant restates his argument that "[t]he details of the notice are vague, broad and conclusory." (*Id.* at 1.) Citing 18 U.S.C. § 3593(a)(2), Defendant also asserts that "[t]he clear language of the [FDPA] indicates that Congress intended to limit victim impact evidence to such evidence that demonstrates the effect of the offense on the victim and the victim's family." (*Id.* at 2.) Defendant cites the Tenth Circuit's decision in *Fields* for the proposition that the victim-impact factor should not extend to non-family members like the victim's co-workers. (*Id.* at 3 (citing *Fields*, 516 F.3d at 946–47); *see also id.* at 4 (citing *Jones*, 527 U.S. at 395, 399, 119 S.Ct. 2090).)

The Government responded in opposition on June 12, 2013. (ECF No. 166.) Citing numerous circuit-court cases, the Government asserts that the Constitution does not bar testimony from co-workers and employers. (*Id.* at 9–12 (citing *United States v. Whitten*, 610 F.3d 168, 187–88 (2d Cir.2010); *Runyon*, 707 F.3d at 484–85, 499, 500; *United States v. Bolden*, 545 F.3d 609, 626–27 (8th Cir.2008); *United States v. Barrett*, 496 F.3d 1079, 1098–99 (10th Cir.2007); *United States v. Bernard*, 299 F.3d 467, 478 (5th Cir.2002)).) The Government further asserts that the FDPA's language does not foreclose victim-impact testimony from co-workers and employers. According to the Government, the language of 18 U.S.C. § 3593(a)(2) is inclusive, rather than exclusive, and con-

---

**13.** The relevant language of the Government's Notice appears in Paragraph (C)(1)(c), which reads as follows: "The victims' employer, the United States Postal Service, and the victims' colleagues within the United States Postal Service have suffered substantial and irreparable harm, including, but not limited to, emotional distress, grief, loss of companionship, and loss of service." (ECF No. 133 at 4.)

tains a catchall provision, "which allows the Government to give notice of 'any other relevant information' that forms the basis for an aggravating factor." (ECF No. 166 at 12–13 (citing 18 U.S.C. § 3593(a)(2)).)

The Government argues that victim-impact testimony from coworkers and the USPS is admissible in the instant case. The Government emphasizes that the victims in this case "worked in a small post office in a small community. They undoubtedly had close relationships with their colleagues and their colleagues have undoubtedly suffered harm by their deaths." (Id. at 13.) Moreover, the Government argues that the USPS should not be precluded from offering victim-impact testimony:

> [The victims'] murders inside the Henning Post Office had a profound effect on the people who worked at that office and the USPS itself, just as the murders in Whitten had a profound effect upon the New York Police Department ... and the murder in Runyon had a profound effect upon the sailors on the USS Elrod . . . .

(Id. at 14.) The Government distinguishes the Tenth Circuit's decision in Fields by indicating that the court's concern with victim-impact testimony from non-family members was expressed in dicta, and that the court was concerned with "'utilitarian' loss (i.e., loss of contribution to an office, unit, or team), not with personal loss." (Id. at 14–15 (quoting Fields, 516 F.3d at 947).)

▮ The Court finds the Government's argument more convincing. To the extent Defendant restates his prior argument that the language of Paragraph (C)(1)(c) is vague and overbroad, the argument is rejected for the same reasons as stated above. See supra Part III.D.1, pp. 48–52.

Moreover, the Sixth Circuit has addressed and rejected Defendant's constitutional and statutory arguments. In Lawrence, the jury heard victim-impact testimony from seven family members of the victim, as well as "a police officer who served with him." 735 F.3d at 405. "The fellow officer told of his friendship with [the victim] and serving with him on the police force. Several of the witnesses spoke of their emotional responses to [the victim's] death and called him a hero." Id. The defendant in Lawrence argued, similar to Defendant in this case, that the testimony of the victim's partner on the police force was "beyond the scope permitted under the FDPA and Supreme Court precedent." Id. The Sixth Circuit rejected the argument as follows:

> Courts have interpreted Payne and the FDPA to permit similarly situated witnesses, i.e., family members, friends, and co-workers, to give victim-impact testimony. See [Whitten, 610 F.3d at 188–90; Bolden, 545 F.3d at 626; Barrett, 496 F.3d at 1098–99; United States v. Nelson, 347 F.3d 701, 712–14 (8th Cir.2003); Bernard, 299 F.3d at 478–80]. Consistent with these authorities, we hold that the victim-impact evidence from [the victim's] family members and fellow police officer was neither improper nor excessive. Accordingly, the district court did not abuse its discretion by admitting it.

Id. at 405–06; see also United States v. Taylor, No. 1:04–CR–160, 2008 WL 3244074, at *3 (E.D.Tenn. Aug. 6, 2008) ("Allowing victim impact testimony from the victim's close friend and coworker is in accord with the reasoning used by the Supreme Court when it originally authorized the use of victim impact evidence in Payne . . . .").

Defendant's argument that the language of the FDPA limits victim-impact testimo-

ny only to members of the victim's family is unnecessarily restrictive. The statute reads, in relevant part:

The factors for which notice is provided under this subsection *may* include factors concerning the effect of the offense on the victim and the victim's family, and *may* include oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, *and any other relevant information.*

18 U.S.C. § 3593(a) (emphasis added). The language emphasized above indicates that the FDPA is inclusive, not exclusive, regarding victim-impact testimony. The statute "does not, as Defendant suggests, limit *who* may provide the victim impact statements. Rather, it simply limits the content of the statement to evidence concerning the victim . . . ." *Taylor*, 2008 WL 3244074, at *2. In other words, "Congress did not intend for § 3593(a)(2) to be an exhaustive list of ways to present such information, but only intended it to give examples of the types of information that may be presented." *Id.*

The Court recognizes Defendant's reliance on the Tenth Circuit's decision in *Fields*, 516 F.3d at 946–47. (*See* ECF No. 147 at 3.) The Sixth Circuit, however, distinguished *Fields* in its recent *Lawrence* opinion:

In *Fields*, the defendant challenged evidence of the impact of the victim's death on co-workers and the community. The court was unwilling to approve such evidence to the extent that it involved "impersonal utilitarian considerations," but found its admission harmless under the circumstances. The only co-worker who testified was also a close friend of the

victim, his testimony was about the victim and his friendship, and the prosecution did not misuse the evidence in closing. The court found that nothing in the victim-impact testimony addressed community impact directly and that the prosecution did not use it as such in its closing argument to the jury. In this case, as in *Fields*, the only co-worker who testified was also a close friend of [the victim's]. [The co-worker] testified both about his friendship with [the victim] and his own response to [the victim's] death. We find no abuse of discretion in the admission of this evidence.

735 F.3d at 406.

Defendant's Motion is before the Court in a pre-trial posture. No victim-impact witnesses have testified yet. The only portion of the Government's Notice that suggests the victim-impact testimony in this case could stray into a discussion regarding "utilitarian" loss, *see Fields*, 516 F.3d at 947, is the phrase "loss of service." (ECF No. 133 at 4.) The Government asserts, however, that "testimony from the victims' colleagues and employer will describe personal loss," rather than utilitarian loss. (ECF No. 166 at 15.) If the victim-impact testimony introduced at trial strays from its permissible scope (personal loss), however, Defendant is not without an avenue for relief.[14] *See Payne*, 501 U.S. at 825, 111 S.Ct. 2597 ("In the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." (citing *Darden v. Wainwright*, 477 U.S. 168, 179–83, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986))).

14. Moreover, the Court can alleviate any issues in this regard with instructions to the witness and the jury. As stated in this section, there is no legal basis for striking the Government's Notice or restricting certain testimony ex ante.

For the reasons stated above, Defendant's Motion to Dismiss/Strike Non–Statutory Aggravating Factors Concerning Impact of the Offense on the Employer and Colleagues of the Victim (ECF No. 147) is DENIED.

## H. Motion to Strike Future Dangerousness as an Aggravator (ECF No. 148)

On May 6, 2013, Defendant filed his Motion to Strike Future Dangerousness as an Aggravator. (ECF No. 148.) The Government responded in opposition on June 12, 2013. (ECF No. 168.) Defendant "moves this Court to strike the future dangerousness aggravating factor or, in the alternative, grant a pre-sentencing hearing as to its reliability." (ECF No. 148 at 1.) The challenged portion of the Government's Notice reads as follows:

### 7. *Future Dangerousness*

The defendant is likely to commit criminal acts of violence in the future that would constitute a continuing and serious threat to the lives and safety of others as evidenced by his participation in other serious violent acts and his institutional misconduct while imprisoned awaiting trial, including, but not limited to the following:

(a) The conduct charged in the Indictment.

(b) The armed robbery of Southeast Financial Federal Credit Union in Lavergne [sic], Tennessee, on October 29, 2010.

(c) The armed robbery of the Mid–South Bank in Smyrna, Tennessee, on November 29, 2010.

(d) The armed carjacking of Bill Petty, in Nashville, Tennessee, on February 14, 2011.

(e) Conspiracy to commit armed robbery on or about February 14, 2011.

(f) Planning to escape when brought to court by attacking a Deputy U.S. Marshal with a "shank;"

(g) Possessing plastic trays and pieces of plastic trays in his cell at the federal pretrial detention facility in Mason, Tennessee, with the intent to make a weapon (a "shank") out of these materials; and

(h) Attempting to assault a correctional officer after being found with "shank" making materials in his cell.

(ECF No. 133 at 5–6.)

Defendant makes eight separate arguments in support of his Motion. The Court addresses each of them in turn below.

### 1. Vagueness and Overbreadth

Defendant reprises his argument that the Government's Notice is vague and overbroad. Defendant argues that the future-dangerousness factor "may be viewed by a jury as applying to all murderers," and that the factor does "not perform a constitutional narrowing function." (ECF No. 148 at 4–5.) Defendant asks the Court to strike the factor or, in the alternative, "to set forth with specificity all of the evidence [the Government] will use to prove this aggravator against [Defendant], with an informative outline." (*Id.* at 5.)

The Government argues that "federal courts have routinely rejected vagueness challenges to future dangerousness factors similar, if not identical, to the one alleged in this case." (ECF No. 168 at 2 (citing cases).) The Government further asserts that its future-dangerousness language "provides a common-sense core of meaning of what the jury must find." (*Id.*)

■ The Court rejects Defendant's argument that the future-dangerousness factor is vague or overbroad. "The Supreme Court has held that future dangerousness as an aggravating factor in a capital case is not vague." *United States v. Spivey*, 958 F.Supp. 1523, 1535 (D.N.M.1997) (citing *Jurek*, 428 U.S. at 275–76, 96 S.Ct. 2950). "Other courts have uniformly upheld the use of future dangerousness as a non-statutory aggravating factor." *United States v. Duncan*, No. CR07–23–N–EJL, 2008 WL 711603, at *11 (D.Idaho Mar. 14, 2008) (citing *United States v. Rodriguez*, 389 F.Supp.2d 1135, 1144 (D.N.D.2005)).

The Court finds that the Government's Notice as to future dangerousness has a "common-sense core of meaning ... that criminal juries should be capable of understanding." *Tuilaepa*, 512 U.S. at 973, 114 S.Ct. 2630 (citation and internal quotation marks omitted). It is not, therefore, void for vagueness. Moreover, as stated above, future dangerousness is a non-statutory aggravator and, as such, need not narrow the class of death-penalty eligible defendants. *See supra* Part III.D.2, p. 54–55; *Gooch*, 2006 WL 3780781, at *26–28. Accordingly, Defendant's vagueness and overbreadth challenges are rejected.

■ The Court also rejects Defendant's request for an "informative outline" expounding on the future-dangerousness factor. (ECF No. 148 at 5.) First, the "FDPA and the Constitution require that the defendant receive adequate notice of the aggravating factor, ... not notice of the specific evidence that will be used to support it." *Higgs*, 353 F.3d at 325. Second, the Government's Notice provides explicit details regarding the conduct the Government will highlight in support of the future-dangerousness factor.[15] (*See, e.g.*, ECF No. 133 at 6 (listing Defendant's "[p]lanning to escape when brought to court by attacking a Deputy U.S. Marshal with a 'shank' ").) Accordingly, Defendant has constitutionally adequate notice of this factor.

### 2. Future Dangerousness as Duplicative

Defendant asserts that the future-dangerousness factor "impermissibly duplicates the underlying crimes in the indictment, and the other non-statutory aggravating factors...." (ECF No. 148 at 6.) The Government responds that the Constitution "does not prohibit the use of an aggravating factor during the sentencing phase that duplicates one or more elements of the offense found at the guilt phase." (ECF No. 168 at 3.) The Government further argues that the double-counting theory, if it even applies in this case, does not invalidate the future-dangerousness factor. (*See id.* at 3–5.)

■ The Court rejects Defendant's arguments. First, "the Eighth Amendment does not prohibit the use of an aggravating factor during the sentencing phase that duplicates one or more elements of the offense of the crime found at the guilt phase." *Higgs*, 353 F.3d at 315 (citing *Lowenfield*, 484 U.S. at 246, 108 S.Ct. 546); *see also Williams*, 2013 WL 1335599, at *38 ("[T]o the extent that Defendant argues that the future dangerousness factor should be stricken because it duplicates elements of the offense of first-degree murder charged in the superseding indictment, the Court rejects the argument.").

**15.** The Government's Supplement to Notice of Intent to Seek the Death Penalty, filed on February 26, 2014, provides further details in support of the future-dangerousness factor by highlighting Defendant's conduct during previous proceedings before this Court. (*See* ECF No. 343.)

Second, the Court rejects Defendant's argument that the future-dangerousness factor is duplicative of other non-statutory factors for the same reasons listed above. *See supra* Part III.D.3, pp. 55–56. As an initial matter, Defendant does not identify which non-statutory factor future dangerousness duplicates, nor argue how they are duplicative. Moreover, Defendant's argument fails on its own terms. The jury need not find the presence any other non-statutory factor alleged in the Government's Notice in order to find the presence of future dangerousness, regardless of whether the evidence undergirding the factors is the same. *See Fell II*, 531 F.3d at 236.

### 3. Congressional Intent

Defendant also argues that, because Congress did not include future dangerousness in its list of statutory aggravating factors, *see* 18 U.S.C. § 3592(c), it did not intend for future dangerousness to be used as a non-statutory factor. (ECF No. 148 at 7.) The Government asserts that "federal courts of appeals have routinely approved of the use of non-statutory aggravating factors alleging future dangerousness in capital cases under the FDPA." (ECF No. 168 at 7 (citing *United States v. Lujan*, 603 F.3d at 856–59); *Whitten*, 610 F.3d at 203; *United States v. Basham*, 561 F.3d 302, 331 (4th Cir.2009); *Bernard*, 299 F.3d at 482; *Corley*, 519 F.3d at 723.)

The Government's argument is more availing. Although Defendant is correct that Congress's enumerated list of statutory aggravating factors does not include future dangerousness, its list does include the following catchall provision: "The jury, or if there is no jury, the court, may consider whether *any other aggravating factor* for which notice has been given exists." 18 U.S.C. § 3592(c) (emphasis added). There is "widespread acceptance

that evidence of future dangerousness is indeed a relevant consideration in the sentencing process." *Corley*, 519 F.3d at 723. Moreover, other courts have recently rejected challenges identical to Defendant's. *See, e.g., United States v. Stone*, No. CR12–0072–JCC, 2013 WL 6799119, at *3–4 (E.D.Cal. Dec. 20, 2013) (declining to strike a future-dangerousness factor on the basis of Congressional intent); *Williams*, 2013 WL 1335599, at *31 (same). Accordingly, Defendant's argument is rejected.

### 4. Limitation of Future Dangerousness to Acts While Incarcerated

Defendant objects to the Government's first five allegations of future dangerousness (*see* ECF No. 133 at 5–6, ¶¶ 7(a)-(e)), which assert Defendant's past conduct outside of a prison setting. (*See* ECF No. 148 at 9.) Defendant argues that because the jury can only sentence him either to death or life imprisonment without the possibility of parole, the Government can only prove the future-dangerousness factor using evidence that Defendant will be a danger in prison. (*See id.* at 9–10.)

The Government concedes that "due process entitles a defendant to inform the jury of his parole ineligibility, either by jury instruction or in arguments of counsel." (ECF No. 168 at 8 (citing *Kelly v. South Carolina*, 534 U.S. 246, 252, 122 S.Ct. 726, 151 L.Ed.2d 670 (2002); *Simmons v. South Carolina*, 512 U.S. 154, 161–62, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994)).) The Government disputes, however, Defendant's assertion that it is required to limit evidence of future dangerousness to conduct while incarcerated either in its Notice or at trial. (*See id.*) According to the Government, "[e]vidence of Defendant's criminal misconduct outside of prison supports the allegation that he is likely to be a future danger,

even in a secure prison setting." (*Id.* at 9.)

■ The Government's position is more convincing. The Supreme Court has made it clear that "where a capital defendant's future dangerousness is at issue, and the only sentencing alternative to death available to the jury is life imprisonment without possibility of parole, due process entitles the defendant 'to inform the jury of [his] parole ineligibility, either by a jury instruction or in arguments by counsel.'" *Shafer v. South Carolina,* 532 U.S. 36, 39, 121 S.Ct. 1263, 149 L.Ed.2d 178 (2001) (alteration in original) (quoting *Ramdass v. Angelone,* 530 U.S. 156, 165, 120 S.Ct. 2113, 147 L.Ed.2d 125 (2000)). "The aim is just to ensure that the jury is not misled about a defendant's future incarceration status when assessing evidence of his future dangerousness." *Fields,* 516 F.3d at 942 (citing *Shafer,* 532 U.S. at 49–50, 121 S.Ct. 1263).

The Eighth and Tenth Circuits, however, have declined to extend the Supreme Court's principle to mean that the future-dangerousness factor must be limited to the prison setting. In *Fields,* the Tenth Circuit held that "an explicit prison-setting limitation need not be included in a future-dangerousness aggravator where ... the jury is clearly informed that the defendant would not be eligible for parole if a life sentence were imposed." *Id.* at 943. Similarly, in *United States v. Allen,* the Eighth Circuit held that, where a jury was informed of a capital defendant's ineligibility for parole, there were "no statutory or constitutional problems with arguing to a capital sentencing jury the nonstatutory aggravating factor of future dangerousness in support of a death sentence." 247 F.3d 741, 788–89 (8th Cir.2001), *vacated and remanded on other grounds,* 536 U.S. 953, 122 S.Ct. 2653, 153 L.Ed.2d 830 (2002). The Eighth Circuit reasoned that:

A defendant in prison for life is still a risk to prison officials and to other inmates, and even though a life sentence without the possibility of parole greatly reduces the future danger to society from that particular defendant, there is still a chance that the defendant might escape from prison or receive a pardon or commutation of sentence.

*Id.* at 788; *see also Bernard,* 299 F.3d at 482.

The cases cited by Defendant in support of striking the portions of the Government's Notice highlighting out-of-prison conduct are either inapposite or distinguishable. For example, Defendant cites *Fields* for the assertion that "only evidence that shows a defendant will be a danger *in prison* will be admissible under [ ] the FDPA." (ECF No. 148 at 10 (citing *Fields,* 516 F.3d at 942–44).) As stated above, however, *Fields* expressly rejected a limitation on future-dangerousness evidence as long as the jury was instructed that the defendant in that case was ineligible for parole. 516 F.3d at 943. Defendant also cites *United States v. O'Reilly,* 545 F.Supp.2d 630, 638–39 (E.D.Mich.2008) in support of his contention that future-dangerousness evidence should be limited as applied to life in prison. (ECF No. 148 at 10–11.) In *O'Reilly,* however, the court restricted the government from relying on evidence regarding the defendant's future plans to engage in violence "when released from prison." 545 F.Supp.2d at 638–39. In this case, the Government's Notice emphasizes only Defendant's *past* conduct. (*See* ECF No. 133 at 5–6.)

Defendant further relies on *United States v. Llera Plaza,* 179 F.Supp.2d 464, 487–88 (E.D.Pa.2001). (ECF No. 148 at 11.) In *Llera Plaza,* however, the court merely held that, "if there is a sentencing phase, the jury will be instructed that it is to evaluate the defendants' 'future danger-

ousness' in the context of life imprisonment, and the government will be requested to limit its sentencing phase evidence to that which is relevant to a context of life imprisonment." 179 F.Supp.2d at 487–88. The Court did *not* restrict the government from presenting out-of-prison conduct in support of the future-dangerousness factor. Similarly,. the court in *United States v. Rodriguez* limited the government to presenting evidence of future dangerousness in the context of life imprisonment, finding "[ t]he threat that [ the defendant] may escape, be pardoned, or have his sentence commuted [ ] simply illusory." No. CRIM. 2:04–CR–55, 2006 WL 487117, at *5 (D.N.D. Feb. 28, 2006) (citing *United States v. Gilbert*, 120 F.Supp.2d 147, 154–55 (D.Mass.2000)). Again, while the court in *Rodriguez* restricted the government from asserting the defendant's future dangerousness in a non-prison setting, it did not go as far as restricting the government from relying on past conduct in a non-prison setting as proof of the defendant's danger *within* a prison setting. *See id.* The Court has found no authority supporting such a restriction, and other courts have recently rejected arguments identical to the one advanced by Defendant in this case. *See, e.g., Williams*, 2013 WL 1335599, at *31–32.

Accordingly, the Court finds that Defendant is entitled to a jury instruction as to his ineligibility for parole if convicted of Counts One and Two of the Superseding Indictment. *See Shafer v. South Carolina*, 532 U.S. at 38–39, 121 S.Ct. 1263; *see also Williams*, 2013 WL 1335599, at *32. As a necessary corollary, the Government cannot argue that the jury should consider Defendant's potential future dangerousness in non-prison settings. *See United States v. Flores*, 63 F.3d 1342, 1368–69 (5th Cir.1995); *Rodriguez*, 2006 WL 487117, at *5. Defendant's argument that the Government cannot present evidence of Defendant's past out-of-prison conduct in support of his future dangerousness within a prison setting, however, is rejected. The argument is not supported by law or logic, as the conduct alleged in Paragraph 7(a)-(e) of the Government's Notice is probative of Defendant's possible future dangerousness while incarcerated. (*See* ECF No. 133 at 5–6.)

### 5. Frequency with Which Future Dangerousness Is Alleged

In his fifth heading, Defendant asserts that the future-dangerousness factor has been alleged so frequently "as to make the factor worthless as a distinguishing criteria for the application of the death penalty." (ECF No. 148 at 12.) Defendant asserts that the future-dangerousness factor has been alleged in more than three quarters of federal capital trials since 1995, and that it has been found to exist in one third of trials in which it is alleged. (*Id.*) The Government responds that "[t]he future dangerousness factor need not narrow the class of eligible offenders. Rather, it must only be relevant to the character of the defendant and the sentencing decision before the jury." (ECF No. 168 at 13.)

The Court rejects Defendant's argument. A recent district-court decision persuasively rejected the exact same argument as follows:

The future dangerousness factor is not "worthless as a distinguishing criteria for the application of the death penalty" merely because it is frequently asserted in capital cases. Evidence concerning Defendant's future dangerousness need not narrow the class of death-eligible defendants; rather, it need only be relevant to the jury's sentencing determination. Thus, the Court will not strike the factor merely because it is frequently alleged in capital cases.

*Williams,* 2013 WL 1335599, at \*35 (citations omitted). The Court adopts this analysis and rejects Defendant's position.

### 6. Unreliability of Future Dangerousness

Defendant's sixth argument is that the Court should strike the future-dangerousness factor because "there is no reliable way to predict an individual's future dangerousness." (ECF No. 148 at 12.) Defendant cites several studies indicating "that both juries and experts alike are unable to accurately predict whether a defendant will commit serious acts of violence in prison. In fact, their predictions have been highly inaccurate." (*Id.* at 12–13; *see also id.* at 13–21.) Defendant further asserts that the future-dangerousness factor should be stricken "because the government cannot possibly prove, beyond a reasonable doubt, that [Defendant] will seriously injure or kill someone while incarcerated." [16] (*Id.* at 13.)

The Government's Response notes that Defendant has not cited any cases adopting his position and emphasizes that numerous federal courts have rejected identical arguments. (*See* ECF No. 168 at 14.) The Government also argues that the Court should not rely upon statistical studies to deviate from the Supreme Court's holdings in *Jurek* and *Estelle.* (*Id.* at 17–19.) Finally, the Government argues that the phrase "likely to commit criminal acts of violence in the future" (ECF No. 133 at 5) does not, as Defendant asserts, "improperly dilute[ ] the [G]overnment's burden of proving an aggravator beyond a reasonable doubt, as set forth in 18 U.S.C. § 3592(c)" (ECF No. 148 at 23–24). (ECF No. 168 at 19–20.)

The Court rejects Defendant's arguments. As an initial matter, the Supreme Court is clear that a jury may consider a capital defendant's propensity to commit future acts of violence in making its sentencing decision. *See Jurek,* 428 U.S. at 274–75, 96 S.Ct. 2950; *see also United States v. Umana,* 707 F.Supp.2d 621, 633–34 (W.D.N.C.2010); *Williams,* 2013 WL 1335599, at \*32. In *Jurek,* the Supreme Court stated:

It is, of course, not easy to predict future behavior. The fact that such a determination is difficult, however, does not mean that it cannot be made. Indeed, prediction of future criminal conduct is an essential element in many of the decisions rendered throughout our criminal justice system.... [A]ny sentencing authority must predict a convicted person's probable future conduct when it engages in the process of determining what punishment to impose. For those sentenced to prison, these same predictions must be made by parole authorities. The task that a [capital sentencing] jury must perform in answering the ... question [of future dangerousness] is thus basically no different from the task performed countless times each day throughout the American system of criminal justice. What is essential is that the jury have before it all possible relevant information about the

---

**16.** Defendant asserts that, unlike the inquiries in *Jurek,* 428 U.S. 262, 96 S.Ct. 2950, and *Barefoot v. Estelle,* 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983), *superseded in part by statute,* Pub.L. No. 104–132, § 102 (1996) (28 U.S.C. § 2253(c)), *as recognized in Slack v. McDaniel,* 529 U.S. 473, 480–81, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000), the inquiry in Defendant's case "is whether [Defendant] will harm inmates or correctional personnel at a federal maximum security prison—a setting specifically designed, organized, and staffed to handle inmates who have been convicted of violent crimes, where he will remain under close supervision forever if spared execution." (ECF No. 148 at 14; *see also id.* at 21.)

individual defendant whose fate it must determine.

428 U.S. at 274–76, 96 S.Ct. 2950 (footnotes omitted).

Moreover, in *Estelle*, the Supreme Court held that expert testimony as to future dangerousness is not per se inadmissible. 463 U.S. at 896–99, 103 S.Ct. 3383. The Court was not convinced by the petitioner's argument that psychiatrists were categorically unable to predict future dangerousness with an acceptable degree of reliability. *See id.* at 896, 103 S.Ct. 3383 ("The suggestion that no psychiatrist's testimony may be presented with respect to a defendant's future dangerousness is somewhat like asking us to disinvent the wheel."). Specifically, the Court was "not persuaded that such testimony is almost entirely unreliable and that the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Id.* at 899, 103 S.Ct. 3383; *see also id.* at 899 n. 7, 103 S.Ct. 3383 ("All of these professional doubts about the usefulness of psychiatric predictions can be called to the attention of the jury.").

Recent district-court decisions have rejected statistics-based arguments that are practically identical to those asserted by Defendant in the instant case. *See Williams,* 2013 WL 1335599, at *33; *Umana,* 707 F.Supp.2d at 634. The Court is unwilling to stray from binding Supreme Court precedent based on the statistical studies proffered by Defendant.[17] *See McCleskey v. Kemp,* 481 U.S. 279, 319, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987) (noting that statistical arguments in the capital-sentencing context "are best presented to the legislative bodies"); *Agostini v. Felton,* 521 U.S. 203, 237, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) (stating that where a Supreme Court precedent directly applies in a case, the lower courts should follow that precedent unless and until it is changed by the Supreme Court); *Lawrence,* 735 F.3d at 439 ("The district court correctly determined that [statistical] evidence is inconclusive."); *see also United States v. Cheever,* 423 F.Supp.2d 1181, 1218 (D.Kan.2006) ("[E]ven if the court were to consider the social science studies advanced by defendant, it would follow the lead of other courts that have categorically rejected the application of these studies to FDPA proceedings." (citations omitted)).

Moreover, the broad statistical arguments advanced by Defendant do not necessarily indicate that the jury will be unable to reliably apply the future-dangerousness factor in *this* case.[18] This is

---

**17.** The Court notes Defendant's assertion that he is not asking the Court to divert from the Supreme Court's decisions in *Jurek* and *Estelle.* Defendant argues that "[*Estelle*] was directed to the issue of future community violence...." (ECF No. 148 at 21.) He states, "[t]he issue in this case is different: is there any valid means to predict whether [Defendant] will commit serious acts of violence while incarcerated, for the rest of his life, in a maximum-security penitentiary managed by the Bureau of Prisons? The answer is emphatically no." (*Id.*) This distinction is not dispositive. The Court is aware of no other federal court striking a future-dangerousness factor on this basis and the Court is unwilling

to do so without further guidance from the Supreme Court or the Sixth Circuit.

**18.** The Court notes that many of the studies cited by Defendant were authored by Dr. Mark D. Cunningham. *See, e.g.,* Mark D. Cunningham, et al., *Capital Jury Decision–Making: The Limitations of Predictions of Future Violence,* 15 Psychol., Pub. Pol'y & L. 223 (2009) (cited in ECF No. 148 at 18–21). Dr. Cunningham describes future-dangerousness determinations as "unknowable," and states that such predictions "will prove to be random." *Id.* at 252. Dr. Cunningham has nevertheless offered predictions as to future dangerousness. *See Martinez v. Dretke,* 173 Fed.

especially true in light of the fact that the Government's Notice and Supplement to the Notice highlight multiple examples of Defendant's violent conduct while in custody. (*See* ECF No. 133 at 6; ECF No. 343.) *Cf. United States v. Casey*, No. 05–277(ADC), 2012 WL 6645702, at *2 (D.P.R. Dec. 20, 2012) ("[E]ven if [the Court] were not bound by Supreme Court precedent approving use of a future dangerousness factor and expert testimony in support thereof, this overarching theory [of the unreliability of future dangerousness] carries little weight in light of the facts of the instant case, where the United States has produced institutional records which demonstrate defendant's rebellious and violent nature while incarcerated." (footnotes omitted)).[19] "It is not this court's task to put capital punishment on trial. That's a job for someone else. This court's job is to ensure a fair trial for *this* defendant for the crimes charged in the indictment." *Cheever*, 423 F.Supp.2d at 1217.

Finally, the Court is not convinced that the language "likely to commit criminal acts of violence in the future" (ECF No. 133 at 5) lowers the Government's statutory burden of proving the existence of the future-dangerousness factor beyond a reasonable doubt. *See* 18 U.S.C. § 3593(c). Defendant asserts that this phrase "calls upon the jurors to decide, not whether [Defendant] *will* commit other acts of violence in prison, but whether he *might*." (ECF No. 148 at 23.) The exact same language was recently upheld against the exact same challenge by the United States

District Court for the Middle District of Pennsylvania. *See Williams*, 2013 WL 1335599, at *33; *see also United States v. Williams*, No. CR–05–920–RSWL, 2008 WL 4644830, at *6 (C.D.Cal. Oct. 15, 2008) ("It is not illogical to say that the jury must find that Defendant is likely to commit future criminal acts beyond a reasonable doubt."). Defendant's argument as to the unreliability of the future-dangerousness factor is, therefore, rejected.

### 7. Prejudice

Defendant also argues that "unadjudicated conduct, offered in support of the future dangerousness factor, is not automatically admissible." (ECF No. 148 at 24 (citing *Corley*, 519 F.3d at 724).) Defendant asserts that the Court "should order the Government to submit a proffer of the evidence it seeks to use to prove [Defendant's] future dangerousness, hold an evidentiary hearing to assess the reliability, relevance, probative value, and prejudicial impact of the evidence." (*Id.* at 24–25.) The Government argues that the acts alleged as indicators of future dangerousness in its Notice are "clearly relevant to the future dangerousness analysis. The Government is prepared to prove Defendant's participation in each act with testimony from victims, witnesses, and investigating officers. The Government will provide full discovery in support of each act. Defendant is not, however, entitled to preview the Government's evidence." (ECF No. 168 at 21–22.)

Appx. 347, 350 (5th Cir.2006) (noting that Dr. Cunningham "testified that there was only a small chance that a person like [the defendant] would commit future acts of violence in prison.").

19. In *Casey*, the court was "impressed" by statistical arguments similar to those advanced by Defendant in this case, but recog-

nized that it is "bound by the precedent of higher courts, particularly the United States Supreme Court," urging "these higher courts to re-think their precedent approving use of the future dangerousness aggravating factor and finding constitutional propriety in the use of a jury to make a prediction regarding potential for future violence." 2012 WL 6645702, at *2 n. 5.

"[E]very circuit to consider the issue has held that unadjudicated conduct may be considered in the process of assessing aggravating factors, and many courts have specifically recognized the relevance to the factor of future dangerousness." *Corley,* 519 F.3d at 724.

> [T]he district court in determining whether such information may be considered must consider a number of factors, including the reliability of the evidence, the prejudicial and probative impact of the evidence, and the burden of proof both for determining reliability and for a jury to determine whether the conduct may be considered.

*Id.* at 724 (recognizing that the district court conducted a hearing before allowing the jury to hear evidence of prior unadjudicated conduct in support of future dangerousness).

Under the FPDA, "information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c).

> The objective of the sentencing stage of a capital case is to allow the jury a full appraisal of the defendant. Where the defendant has wide latitude to put on mitigating evidence of his positive characteristics and sympathetic past, there is nothing inherently "unfair" with allowing the government some latitude to present the unfavorable aspects of the defendant, so long as that evidence is relevant to a properly identified aggravator and does not involve gratuitous gruesomeness or inflammatory detail beyond what is necessary to reveal to the jury the true nature of what happened.

*Lujan,* 603 F.3d at 858 (citation omitted).

The Court rejects Defendant's request for an evidentiary hearing regarding the Government's future-dangerousness evidence at this time. As stated above, the Government "is not required to provide specific evidence in its [§ 3593] notice of intent." *LeCroy,* 441 F.3d at 929 (alteration in original) (internal quotation marks omitted); *see also Higgs,* 353 F.3d at 325. Moreover, the Government has provided substantial and specific notice of the particular acts it plans to highlight regarding the future-dangerousness factor. (*See* ECF No. 133 at 5–6.) The Court, therefore, finds that a pre-trial hearing as to future-dangerousness evidence is unnecessary. The Court can assess the potential prejudice of any future-dangerousness evidence during the penalty phase of the trial, if it occurs.

## 8. Screening of Evidence

In his final argument, Defendant restates his previously rejected argument that the Government's Notice is "vague, open-ended, and uninformative," and asks the Court to "order the Government to produce an informative outline, which clearly lays forth the evidence it intends to use against [Defendant] to prove the future dangerousness aggravator." (ECF No. 148 at 25–26.) The Government responds that its Notice is adequate and that "there is no need for a pretrial proffer, be it an evidentiary outline or hearing, in order for Defendant to have adequate notice of the factors and type of evidence that will be presented." (ECF No. 168 at 23.)

The Court rejects Defendant's request for the reasons stated above. *See supra* Part III.H.7, p. 91. "Defendant is not entitled to the Government's theory of this case because Defendant may present many mitigating factors to counter the Government's aggravating factors. Due Process is not offended; therefore, Defendant's request for an outline of the Government's theory on future dangerousness is denied."

*United States v. Regan,* 228 F.Supp.2d 742, 754 (E.D.Va.2002).

In light of the foregoing, Defendant's Motion to Strike Future Dangerousness as an Aggravator (ECF No. 148) is DENIED.

## I. Motion to Strike Lack of Remorse as an Aggravator (ECF No. 149)

On May 6, 2013, Defendant filed his Motion to Strike Lack of Remorse as an Aggravator. (ECF No. 149.) Defendant objects to the following language in the Government's Notice:

> 6. *Lack of Remorse*
>
> The defendant has demonstrated a lack of remorse for the murder of the victims as evidenced by his actions during and following the murders and by his statements made to law enforcement officers after his arrest.

(ECF No. 133 at 5.) Defendant argues that the lack-of-remorse factor is invalid because it forces him to testify in order to rebut it and is unreliable, thereby violating his Constitutional rights. (ECF No. 149 at 7–16.) He cites *United States v. Davis,* 912 F.Supp. 938 (E.D.La.1996), in support. (*See id.* at 5–6.) Defendant also asks the Court to order the Government to submit a proffer of its evidence in support of lack of remorse, either through an informative outline or an evidentiary hearing. (*See id.* at 16–18.)

The Government responded in opposition on June 12, 2013. (ECF No. 162.) According to the Government, "Defendant's lack of remorse is demonstrated by his affirmative conduct and statements, not his silence." (*Id.* at 1.) The Government cites numerous cases in which federal courts have approved lack-of-remorse factors. (*See id.* at 1–3 (citing cases).) The Court finds the Government's position more persuasive.

As a threshold matter, in *Davis,* the United States District Court for the Eastern District of Louisiana stated:

> Lack of remorse is a subjective state of mind, difficult to gage objectively since behavior and words don't necessarily correlate with internal feelings. In a criminal context, it is particularly ambiguous since guilty persons have a constitutional right to be silent, to rest on a presumption of innocence and to require the government to prove their guilt beyond a reasonable doubt. To allow the government to highlight an offender's "lack of remorse" undermines those safeguards. Without passing on whether lack of remorse is *per se* an inappropriate independent factor to consider, the court finds it inappropriate in this case. The only information proposed to sustain the factor is [the defendant's] alleged jubilation in learning that [the victim] had been killed. The government does not propose to introduce evidence of continuing glee, or boastfulness, or other affirmative words or conduct that would indicate a pervading and continuing lack of remorse. Furthermore, as already noted, the allegation of lack of remorse encroaches dangerously on an offender's constitutional right to put the government to its proof.

912 F.Supp. at 946. The court did, however, allow proof of lack of remorse as probative of the defendant's future dangerousness. *See id.*

Notwithstanding *Davis,* the Supreme Court has indicated that lack of remorse is an appropriate free-standing aggravating factor. *See Zant,* 462 U.S. at 886 n. 22, 103 S.Ct. 2733 (quoting *Fair v. State,* 245 Ga. 868, 268 S.E.2d 316, 321 (1980), *cert. denied,* 449 U.S. 986, 101 S.Ct. 407, 66 L.Ed.2d 250 (1980)). Other courts have followed suit. *See United States v. Caro,*

597 F.3d 608, 630–31 (4th Cir.2010); *United States v. Mikos*, 539 F.3d 706, 718–19 (7th Cir.2008); *Stone*, 2013 WL 6799119, at *6; *Pleau*, 2013 WL 1673109, at *6 (approving a lack-of-remorse factor where the government "indicate[d] that it [would] not rely on [the defendant's] silence or his decision not to plead guilty"); *Johnson*, 915 F.Supp.2d at 999; *Casey*, 2012 WL 6645702, at *4–5; *Cooper*, 91 F.Supp.2d at 112–13; *Nguyen*, 928 F.Supp. at 1541–42 (cautioning the government that evidence in support of lack of remorse must constitute "more than mere silence."). Even the Eastern District of Louisiana has distinguished *Davis*. *See United States v. Davis*, No. CR.A. 01–282, 2003 WL 1873088, at *9 (E.D.La. Apr. 10, 2003) (declining to strike lack-of-remorse factor because "the government does not intend to rely on mere silence as proof of lack of remorse. Rather, in this case, unlike in *Davis*, the government says it will 'introduce evidence of ... affirmative words or conduct that would indicate a pervading and continuing lack of remorse.'" (quoting *Davis*, 912 F.Supp. at 946)).

The relevant inquiry, therefore, is whether the lack-of-remorse factor is inappropriate in *this* case based on the information presented in the Superseding Indictment and the Government's Notice. As long as the Government "intends to offer only affirmative [actions engaged in by Defendant] to prove his lack of remorse," its Notice need not be stricken. *See Umana*, 707 F.Supp.2d at 636–37. The Government asserts that "Defendant's affirmative conduct and statements display his lack of remorse." (ECF No. 162 at 4.) Specifically, the Government cites the following portion of Defendant's February 16,

2011, interview with the U.S. Postal Inspectors:

I did, came up with a plan where I can get me some money, uh ... it didn't work out like I anticipated but, you know, maybe things happen for a reason. And, uh, I'm more mad about my son dying than anything in the world. You know, 'cause, uh, I don't know. Maybe I'm just, I was just cold-hearted to the fact that it didn't bother me one bit after the fact ... killing those people, man.

(*Id.*) The Government asserts that Defendant "attended a therapy session" with a doctor on the day of the Henning Post Office murders, at which he was described as " 'calm,' 'attentive,' 'communicative,' and 'relaxed.' " (*Id.*) Moreover, the Government cites Defendant's continued participation in violent criminal activity, including "armed bank robberies and carjackings," as evidence of Defendant's lack of remorse for the Henning Post Office murders.[20] (*Id.* at 4–5.) The Court finds the examples highlighted by the Government to be "qualitatively and quantitatively different from the alleged actions in the cases cited by Defendant where 'lack of remorse' could not be submitted to the jury." *See Stone*, 2013 WL 6799119, at *6.

▮ Accordingly, Defendant's Motion to Strike Lack of Remorse as an Aggravator (ECF No. 149) is DENIED. Consistent with the approach of other courts, however, the Court will instruct the jury that Defendant's mere silence cannot be considered as proof of the lack-of-remorse factor. *See Umana*, 707 F.Supp.2d at 636; *Johnson*, 915 F.Supp.2d at 1000.

---

20. With the additional examples provided in the Government's Response (*see* ECF No. 162 at 4–5), as well as the Government's Notice (*see* ECF No. 133 at 5–6), the Court is convinced that Defendant has constitutionally ad-equate notice of the lack-of-remorse factor. *See Higgs*, 353 F.3d at 325. Accordingly, the Court rejects Defendant's request for the Court to require the Government to submit additional proof. (ECF No. 149 at 16–18.)

## J. Motion to Dismiss or Strike Any Aggravator with Open–Ended Phrasing (ECF No. 150)

On May 6, 2013, Defendant filed his Motion to Dismiss or Strike Any Aggravator with Open–Ended Phrasing. (ECF No. 150.) In the Motion, Defendant objects to the Government's use of phrases like "including, but not limited to," and "for example," arguing that they "undermine[ ] the statutory requirement that the jurors unanimously find each aggravating factor beyond a reasonable doubt." (*Id.* at 1.) Defendant also asserts that these open-ended phrases deny him "the constitutional notice and due process he is entitled to surrounding the aggravators." (*Id.* at 2.)

In a Response filed on June 12, 2013, the Government argues that open-ended language in its Notice "is not a reason to strike the aggravating factors that include such language." (ECF No. 170 at 1.) The Government asserts that, although it is not required to provide evidentiary detail in its Notice, it "has chosen to do so in order to enhance the fairness and efficiency of this case." (*Id.* at 2.) The Government explains that the open-ended language in its aggravating factors serves the purpose of reserving the Government's right to present evidence not specifically listed in the Notice, and that the Government "should not be punished for exceeding its notice obligations." (*Id.*)

The Court agrees with the Government. As an initial matter, Defendant's reliance on *United States v. Ortiz,* 315 F.3d 873, 902–03 (8th Cir.2002), is misplaced. (*See* ECF No. 150 at 2.) In *Ortiz,* the Eighth Circuit considered the phrasing of a trial court's jury instructions, not the government's notice of intent. *See* 315 F.3d at 902–03. While the court found that phrases in the jury instructions such as " 'among others' and 'for example' [were] open-ended and could distract the

jury," the court nevertheless found no constitutional error because the open-ended language was not included in the jury's final instructions and neither party mentioned it during arguments. *Id.* at 903. In this case, Defendant objects to open-ended phrasing in the Government's Notice. As the Government correctly notes, however, "[n]either the Court nor the Government will read the Notice of Intent to the jury during trial and the jury will not receive the Notice of Intent." (ECF No. 170 at 2.) Therefore, there is no danger that the open-ended language to which Defendant objects will undermine unanimity in the jury's determination of the presence or absence of aggravating factors.

Moreover, as stated *supra* Part III.B.1, p. 14, neither the FDPA nor the Constitution require the Government's Notice to provide specific evidentiary detail of the aggravating factors alleged therein. *See Higgs,* 353 F.3d at 325. The open-ended language to which Defendant objects does not constitute notice of unnamed aggravating factors; to the contrary, it merely signals that the Government may rely on evidence not enumerated within its Notice in support of the aggravating factors it *has* alleged. Defendant is not, therefore, deprived of constitutionally adequate notice of the Government's aggravating factors as a result of the Notice's open-ended phraseology.

Accordingly, Defendant's Motion to Dismiss or Strike Any Aggravator with Open–Ended Phrasing (ECF No. 150) is DENIED.

## IV. CONCLUSION

For the reasons stated above, each of Defendant's Motions (ECF Nos. 141–44, 146–50) is DENIED except for his Motion for a Bill of Particulars Regarding Victim Impact (ECF No. 145), as to which the

Court DEFERS RULING. The parties should be prepared to present brief arguments in support of their position regarding Defendant's Motion for a Bill of Particulars Regarding Victim Impact (ECF No. 145) at the report date scheduled to take place at 9:00 a.m. on Friday, March 21, 2014 (ECF Nos. 354, 355).